Jonathan E. JAFFE, Plaintiff,

v.

**FEDERAL RESERVE BANK OF CHICAGO, et al., Defendants.**

No. 83 C 7223.

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1983.

444

Solomon Frydman and Barry E. Morgen, Chicago, Ill., for plaintiff.

M. Kathleen O'Brien, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Jonathan E. Jaffe ("Jaffe") has sued the Federal Reserve Bank of Chicago ("Bank") and its alleged agents R.M. Scheider, R.P. Bush ("Bush") and Andrew M. Cook ("Cook") in connection with Bank's termination of Jaffe's employment. Bush and Cook (represented by Bank's counsel) have moved pursuant to Fed.R.Civ.P. ("Rule") 12(b)(5) to quash service of process against them, posing a claimed interaction between Rule 4(d)(1) and newly promulgated Rule 4(c)(2)(C)(ii) (the latter having taken effect February 28, 1983). This Court writes on a clean slate, for the issue is one of first impression (at least in terms of published decisions).

Jaffe sought to follow Rule 4(c)(2)(C)(ii) by mail service on Bush and Cook at their place of employment (Bank's offices). Bush and Cook returned acknowledgement of service as the Rule provides. They now object that procedure did not conform to Rule 4(d)(1), which they claim creates an implied additional condition of Rule 4(c)(2)(C)(ii) compliance.

Bush and Cook seek to focus on the language of Rule 4(d)(1) permitting service "by leaving copies [of the summons and complaint] at [the defendant's] dwelling house or usual place of abode with some person of suitable age and discretion then residing therein...." Because the summonses were not mailed to their "dwelling houses," they contend service on them was insufficient. That argument makes no sense for at least three reasons.

■ First, by its own terms Rule 4(c)(2)(C)(ii) establishes an alternative, not an addition, to the Rule 4(d)(1) procedure. Rule 4(c)(2)(C)(ii) provides "*[i]f* no acknowledgement of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing" (emphasis added), *then* "service ... shall be made ... in the manner prescribed by subdivision (d)(1) ..." (that is, by personal service or by "dwelling house" delivery).[1] Here Bush and Cook in fact acknowledged service within 20 days. Thus the conditional part of the Rule, calling for a shift to compliance with Rule 4(d)(1) if service by mail has been ineffective, does not come into play at all.

Second, other aspects of the internal structuring of Rules 4(c) and 4(e) compel the same conclusion. Rule 4(c)(2)(A) requires service of the summons and complaint "by any person who is not a party and is not less than 18 years of age" (clearly this means service in the sense of personal delivery) "*except* as provided in subparagraphs (B) and (C) of this paragraph ..." (emphasis added). Only Rule 4(c)(2)(C) ("subparagraph (C)") permits service by mail rather than by personal delivery.[2] Rule 4(d), on the other hand, is obviously geared to service in person rather than mail service, for it says specifically (emphasis added) before going on to prescribe how such service is to be made:

1. Indeed one other aspect of the structure of Rule 4(c)(2)(C) fortifies the conclusion stated in the text. Again by its terms Rule permits service by mail "upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule...." Obviously the Rule's draftsmen knew how to cross-reference Rule 4(d)(1) specifically when they wanted to. That makes all the more strained the attempt by

Bank's counsel to invoke an *implied* incorporation or cross-reference.

2. "Subparagraph (B)" provides for personal service by a United States marshal or specifically appointed process server only upon a litigant's special request, as an exception to the usual personal service by an adult non-party.

The plaintiff shall furnish the *person making service* with such copies as are necessary.

Once again it would be bizarre to read that Rule as an implied adjunct or add-on to the new provision for mail service.

■ But perhaps the most telling demonstration of the poverty of the Bush-Cook position is that the "dwelling house" provision they point to is one for *constructive* rather than *actual* notice. When constructive notice is involved, powerful considerations (of due process dimensions) mandate that the lawsuit papers be left at the location and in the manner best calculated to bring actual notice home[3] to the defendant:

> by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. . . .

■ By total contrast, the specific return receipt requirement of Rule 4(c)(2)(C)(ii) makes it clear *actual* notice is demanded by the new service-by-mail provisions. When notice is actually given a person, it matters not a whit whether he or she receives it at home, at work, at play or anywhere else.[4] And thus it makes no more sense to read a limitation as to *place* of delivery into the personal mail delivery provision of Rule 4(c)(2)(C)(ii) than it would to read a like limitation into the personal in-hand delivery provision of Rule 4(d)(1).

■ To put it in another way, Jaffe did not deliver the papers to the mailman and thereby impute knowledge to Bush and Cook. Instead he caused the papers to be delivered in fact to Bush and Cook, via the mailman (as assisted by Bank's mail room personnel) as his process server.[5]

Bush and Cook point to *William B. May Co. v. Hyatt*, 98 F.R.D. 569 (S.D.N.Y.1983) and *San Miguel & Cia. v. International Harvester Export Co.*, 98 F.R.D. 572 (D.P.R. 1983) as holding new Rule 4(c)(2)(C)(ii) does not displace other requirements remaining elsewhere in Rule 4. Both those cases however enforced the *territorial* restrictions on service appearing in Rules 4(e) and 4(f), because the new service-by-mail provisions did not impliedly amend or supersede those restrictions. Again the structure of Rule 4 itself demonstrates a wholly different relationship between the territorial limitation provisions and the method-of-service provisions of Rule 4(c)(2)(C)(ii) than exists between the alternate methods-of-service provisions of the latter Rule and of Rule 4(d)(1).[6]

### *Conclusion*

For the foregoing reasons the motion by defendants Bush and Cook to quash service of process is denied. Bush and Cook are ordered to answer or otherwise plead to the Complaint on or before January 13, 1984.

**3.** As initially dictated, this was an unintended pun. If any fault is to be ascribed here, it must be to this Court's retaining the language in the editing process.

**4.** Rule 4(d)(1), when it speaks of "delivering a copy of the summons and of the complaint to him personally," of course contains no limitation whatever as to the *place* of delivery.

**5.** All of a piece with Bank counsel's untenable arguments is that based on Bank's size (Mem. 3):

> For instance, at a business establishment such as the Federal Reserve Bank of Chicago, mail is received at a central receiving place and then distributed through intra-company mail to more than 3,000 employees at six

different locations. A particular defendant employee cannot control lost or misdirected mail and cannot control the delays inherent in the process.

Of course, had Bush or Cook not received the summons and complaint he would not have been bound by it. But once he did (and the time clock for responsive pleading only began to run when that happened), what on earth do the logistics of Bank's mail procedures have to do with the issues here?

**6.** In any event *William B. May* and *San Miguel* had no occasion to address the already-discussed fatal flaws in the Bush-Cook arguments. This paragraph of the text is included only to show this opinion does not undercut the rationale of those cases, not to acknowledge those cases need be distinguished (they need not).