**In the Matter of D.H. OVERMYER CO., INC. (OHIO), et al., Consolidated Debtors.**

**Appeal of Amy D. PHILLIPS.**

**No. 84 Civ. 1721.**

United States District Court, S.D. New York.

June 1, 1984.

Patterson, Belknap, Webb & Tyler, New York City, for Custodial Receiver Harold R. Tyler, Jr.; Harold R. Tyler, Jr., Susan Weiner, of counsel.

Michael Cook, New York City, for appellant.

## OPINION

EDWARD WEINFELD, District Judge.

This is an expedited appeal[1] by Amy D. Phillips ("Phillips") from the March 1, 1984, decision of the Bankruptcy Court, Southern District of New York, Howard C. Buschman III, Judge, holding in full force and effect a lease to a warehouse complex in Compton, California, between Phillips, as landlord, and D.H. Overmyer, Co., Inc. ("Overmyer-California"), as tenant. Phil-

lips is a citizen of California. Overmyer-California is one of thirty-nine related corporations (collectively, "Overmyer" or "the consolidated debtors") that have been in arrangement proceedings under the Bankruptcy Act of 1898, as amended,[2] for more than ten years.[3] The controversy leading to the Bankruptcy Court's decision, and the instant appeal, centers about Phillips' refusal to execute a "memorandum of lease," so that the custodial receiver, Harold R. Tyler, Jr. ("Tyler"), could procure title insurance for Overmyer's leasehold interest with a view toward selling the leasehold at the highest possible price for the benefit of Overmyer and its creditors.

The record establishes, and the parties agree, that in 1967 Phillips executed a lease granting Overmyer-California the right to possess or sublet a warehouse complex at 19900 Susana Road, Compton, California, for a period of twenty years, with options to renew the leasehold thereafter for additional terms totalling a maximum of twenty years. The lessee's rights were conditioned upon the payment of specified rents and the performance of other obligations. The lease also provides that the rights and obligations thereunder are assignable. For whatever reason, however, the parties failed properly to record the full lease or a "memorandum of lease," a short synopsis of the full agreement that serves, in California, as an alternative recording document.

Custodial receiver Tyler was appointed on April 7, 1978. On July 20, 1983, the Bankruptcy Court conferred upon him the "sole authority, on behalf of the [c]onsolidated [d]ebtors, to negotiate the sale or other disposition of the assets of the [c]onsolidated [d]ebtors, subject to [the Bank-

---

1. On April 6, 1984, the Court granted appellee's motion to expedite the appeal.

2. Section 403(a) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, 2683, provides:

    A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and

determined under such Act as if this Act had not been enacted, and the substantive rights of the parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

3. Proceedings involving the various debtors

ruptcy Court's] approval."[4] Acting pursuant to this power, Tyler solicited offers to purchase Overmyer's leasehold interest in the Compton warehouse complex. He negotiated an agreement, signed February 1, 1984, between Overmyer and one Stuart Klabin ("Klabin"), whereby Klabin would receive Overmyer-California's rights and assume its obligations under the lease agreement for a price of $800,000.00. On February 10, 1984, the Bankruptcy Court ordered that a hearing be held on March 1, 1984, for the purpose of determining whether the sale to Klabin should be approved. The Bankruptcy Court further ordered that notice of the March 1 hearing be sent to the members of Overmyer's creditors' committee, the attorneys for the consolidated debtors, and others who had expressed interest in purchasing the leasehold interest.[5]

In the period immediately following the scheduling of the hearing on whether to approve the Klabin agreement, Phillips refused to execute a memorandum of lease affirming that the lease was in full force and effect, and thus threatened the proposed sale.[6] Under the agreement with Klabin, Overmyer was obligated to tender a policy of title insurance "insuring the [b]uyer's interest as assignee of the leasehold estate under the [l]ease."[7] Without confirmation from Phillips that the lease was in full force and effect, no title insurer would issue such a policy. The inability to procure title insurance jeopardized not only the proposed sale to Klabin but also one to

any other interested party.[8] Yet at the same time that Phillips refused to execute a memorandum of lease, she offered to purchase for herself the Overmyer leasehold for $750,000.00, $50,000.00 less than the price Klabin offered.

On February 13, 1984, the custodial receiver communicated to the Bankruptcy Judge these impediments to a successful sale and applied for an order directing Phillips to show cause why an order should not be entered "declaring that a lease ... between Amy D. Phillips ... with respect to a warehouse complex located at 19900 Susana Road, Compton, California[,] is in full force and effect." On February 14, 1984, the Bankruptcy Judge issued the order to show cause, returnable February 23, 1984. Pursuant to the order, the custodial receiver on February 14 caused the notice of hearing to be served by overnight express mail upon Phillips at her California residence and upon her California attorney, Harold Rhoden ("Rhoden"), who had represented her in the efforts to buy back the leasehold interest. Following this service, the return date was adjourned one day, to February 24, 1984, by order of the Bankruptcy Court.[9]

On the adjourned return date, Nancy Lane, an associate of Michael Cook ("Cook"), whom Phillips retained for purposes of the hearing, appeared to request a further adjournment because Cook was "out of the country" until February 27.[10] This request was granted and the hearing

---

were ordered consolidated on April 20, 1976.

**4.** February 13, 1984, Application of Harold J. Tyler, Jr. [hereinafter cited as "Tyler App."] ¶ 3.

**5.** The record is not clear whether Phillips was among those notified of the sale. *Cf.* Fed.R. Bankr.P. 11–54 (notice of sale in Chapter 11 proceeding of property of the debtor to be as the Bankruptcy Court "may direct").

**6.** Phillips' reluctance to execute a memorandum of lease was manifest as early as January, 1984. On January 5, 1984, her California attorney wrote to the attorneys for the custodial receiver. His letter states:

I have received your letter of January 4, 1984 and copies of the Memorandum of Lease.

I have two questions.

(1) Why should Amy Phillips sign this?

(2) What are the consequences to Amy Phillips if she does not sign it?

Tyler App. Ex. B.

**7.** Tyler App. ¶ 5 (quoting lease assignment agreement).

**8.** Tyler estimated that a price in excess of $1 million could be obtained for the property. *Id.* ¶ 8.

**9.** *Compare* Fed.R.Bankr.P. 907 (court designates time within which notice must be given) *with* Fed.R.Civ.P. 6 (10 day's notice of motion).

**10.** Record of February 24, 1984, Proceeding at 4.

rescheduled to February 27, 1984, at 9:30 a.m. Cook appeared on the second adjourned date. He requested a further adjournment, which the court granted, until 12:15, during which time he consulted with Rhoden by telephone. When the hearing resumed, Cook requested a further adjournment. The Bankruptcy Court denied this request and proceeded with the hearing. Andrew C. Edgerton ("Edgerton"), Overmyer's director of property management, testified concerning the status of rental payments and the performance of other obligations under the lease. Attempting to elicit responses to support a claim by Phillips that she had terminated the lease pursuant to its terms, Cook questioned Edgerton both on voir dire and on cross-examination, but called no witnesses on Phillips' behalf. In addition to attacking Edgerton's competence to testify to various matters in issue, Cook, throughout the hearing, made numerous protests that the Bankruptcy Court lacked jurisdiction to enter an order binding Phillips and that the failure to grant an additional adjournment amounted to a violation of Phillips' right to due process of law.

Based on the testimony and documents received at the February 27 hearing, Bankruptcy Judge Buschman on March 1, 1984, issued an oral decision finding that Overmyer was current in its rental payments, and had complied with all other obligations under the lease, including the obligation to pay taxes on the complex and to make repairs. He also found that the lease was assignable and that Phillips' refusal to execute a memorandum of lease was an attempt "to defeat the lease itself." The Bankruptcy Judge thus ruled that the lease "is in full force and effect." [11]

Bankruptcy Judge Buschman also amplified upon his denial of Phillips' motion for a further adjournment. He rejected Cook's assertion that a further adjournment was necessary because he had not read the custodial receiver's papers until early in the morning of the February 27 evidentiary hearing; had not had an opportunity to gather and produce evidence to support his client's refusal to execute a memorandum of lease; and could not produce Ms. Phillips or her accountant, Don Bleitz ("Bleitz"), because Phillips is an elderly woman confined to a wheelchair and Bleitz had recently undergone heart surgery. Bankruptcy Judge Buschman found that Phillips had had sufficient notice of the hearing to retain Cook, who appeared, through an associate, at the February 24 hearing; and that prior to Cook's appearance at the February 27 hearing Phillips made no request for an adjournment on the basis of her physical condition or that of her accountant or to have her testimony submitted by deposition. The Bankruptcy Judge then held that Phillips' failure to disclose the nature of her inability to participate in the hearing and her retention of Cook, who was out of the country on the return date set by the Court, "were obvious delaying tactics" and that, having received adequate notice of the issues to be determined at the February 27 hearing, Phillips was not prejudiced by any action of the court in proceeding with the evidentiary hearing on February 27.

## DISCUSSION

Phillips advances four essential claims in support of her appeal from the Bankruptcy Court's March 1 decision: (1) the Bankruptcy Court lacked jurisdiction over Phillips' person; (2) the Bankruptcy Court lacked jurisdiction over the subject matter; (3) Phillips' opportunity to litigate her interest in the leasehold was so curtailed as to amount to a violation of her right to due process of law; and (4) the Bankruptcy Court failed to comply with the Federal Rules of Bankruptcy Procedure in permitting the force and effect of the lease to be litigated upon an order to show cause instead of a full adversary proceeding.

■■■ Phillips' first assignment of error is without substance. Citing *International Shoe Co. v. Washington*,[12] Phillips asserts that the Bankruptcy Court was without power to enter an order declaring the lease to the Compton warehouse complex

---

11. Record of March 1, 1984, Proceeding at 12.

12. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

to be in full force and effect in the absence of "minimum contacts" linking Phillips to New York State. Such a claim fundamentally misconceives the nature of the jurisdiction exercised by the Bankruptcy Court. The power of the Bankruptcy Court to issue effective process derives from congressional enactment, and is not limited by the fourteenth amendment's restrictions on the power of state courts to issue process beyond state borders.[13] Under section 311 of the Bankruptcy Act, the Bankruptcy Court is vested with "exclusive jurisdiction of the debtor and his property, wherever located."[14] It is undisputed that the debtor was in possession of the property pursuant to the terms of the lease when the petitions for arrangement were filed.[15] Whether Phillips had "minimum contacts" with New York is irrelevant to the Bankruptcy Court's power to declare the lease in full force and effect.[16]

Appellant's second principal contention—that the Bankruptcy Court lacked subject matter jurisdiction—is premised upon a claim that Phillips is entitled to a plenary adjudication in a court of general jurisdiction of her claim that she terminated the lease pursuant to its terms. This claim, as well, is without merit. As the Supreme Court noted more than fifty years ago in *Harrison v. Chamberlin:*[17]

[T]he [Bankruptcy] Court is not ousted of its jurisdiction by the mere assertion of an adverse claim; but, having the power in the first instance to determine whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable.[18]

■ Although Phillips attacks Bankruptcy Judge Buschman's implicit determination that she had no "real and substantial" claim to the leasehold,[19] the evidence supporting the implied finding is overwhelming. At the February 27 hearing, Edgerton testified that Overmyer was current in its payment of rent and taxes and in its performance of numerous repairs, as required under the lease. In support of Edgerton's testimony, the custodial receiver offered the cancelled checks indicating that required payments had been made.[20] Also before the court was the unrebutted affidavit of the custodial receiver, which affirmed that Phillips had actively sought to purchase, for $750,000.00, the leasehold interest she asserted had reverted to her upon the alleged termination of the lease agree-

13. See Continental Illinois Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pac. Ry. Co., 294 U.S. 648, 682–83, 55 S.Ct. 595, 608–609, 79 L.Ed. 1110 (1935); In re New York, New Haven and Hartford R.R. Co., 457 F.2d 683, 688 (2d Cir.), cert. denied, 409 U.S. 890, 93 S.Ct. 111, 34 L.Ed.2d 147 (1972); In re Universal Money Order Co., 470 F.Supp. 869, 882 (S.D.N.Y.1977); In re Fotochrome, Inc., 377 F.Supp. 26, 28–29 (E.D. N.Y.1974), aff'd, 517 F.2d 512 (2d Cir.1975); cf. Helicopteros Nacionales de Colombia, S.A. v. Hall, — U.S. ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (International Shoe and its progeny "limit the power of a State to assert in personam jurisdiction over a nonresident defendant" (emphasis added).).

14. 11 U.S.C. § 711 (1976).

15. In 1981 part of the warehouse complex was sublet to a third party, which assumed rental obligations under the lease. See Record of February 27, 1984, Proceeding at 56–59.

16. See 8 Collier on Bankruptcy ¶¶ 3.03, 3.05 (14th ed. 1978); supra note 13 and cases cited therein.

17. 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926).

18. Id. at 194, 46 S.Ct. at 468; see Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940); Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 437 & n. 25, 44 S.Ct. 396, 400 & n. 25, 68 L.Ed. 770 (1924); In re Fiberglass Specialty Co. v. Bor-Son Constr., Inc., 678 F.2d 78, 80 (8th Cir.), cert. denied, 459 U.S. 990, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); In re Atlas Concrete Pipe, Inc., 668 F.2d 905, 910 (6th Cir.1982); In re Huntington Ltd., 654 F.2d 578, 590 (9th Cir.1981); Gorenz v. Illinois Dep't of Agriculture, 653 F.2d 1179, 1182 & n. 5 (7th Cir.1981); In re Sherman Plastering Corp., 340 F.2d 915, 918 (2d Cir.1965); In re Meiselman, 105 F.2d 995, 997 (2d Cir.1939).

19. Bankruptcy Judge Buschman did cite to section 311 of the Act. See Record of March 1, 1984, Proceeding at 12.

20. See Record of February 27, 1984, Proceeding at 68–73.

ment. Phillips called no witnesses. Although she now claims the record discloses "uncontroverted evidence that the [l]andlord ... terminated the lease in question,"[21] an examination of the hearing record reveals that this "uncontroverted evidence" includes nothing more than the unsworn statements of Phillips' counsel.[22] Not one document or supporting affidavit indicating Phillips' right to the leasehold interest was offered to the Bankruptcy Court.[23] On the record before it, the Bankruptcy Court was well within its powers in exercising its summary jurisdiction over the property of the consolidated debtors.

Phillips' third basis for appeal—that the notice provided to her was so deficient as to deprive her of due process of law—is likewise without foundation. The notice required by the due process clause is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[24] The notice provided to Phillips and to her California counsel with respect to the hearing on the order to show cause easily met this standard. The parties agree that the order to show cause was served by overnight express mail on February 14, the day the order was signed. Appellant makes no claim that the courier failed to deliver the order in a timely fashion. That Phillips retained New York counsel in time for the February 24 adjourned hearing date confirms that timely delivery was made. An associate of Phillips' New York counsel appeared at the initial hearing on the order to show cause and notified the court that the retained attorney was "out of the country." The associate failed to apprise the Bankruptcy Judge of the nature of Cook's

absence or to give any indication that Phillips was ignorant of the situation. Cook's associate did not indicate she lacked authority to contact Phillips or that she was ignorant of Cook's whereabouts. On that occasion, Bankruptcy Judge Buschman granted a three-day extension to the following Monday. After Cook arrived more than a half-hour late to the rescheduled hearing, he asserted he had not read the moving papers and, upon his representation, the court granted an additional two-hour adjournment. When the hearing resumed, Cook renewed his plea for an additional adjournment. Although his associate recognized at the February 24 hearing that "time was of the essence" with respect to the sale of the lease, Cook himself failed to offer any reason why, between the time he was retained and the final adjourned date nothing was done to prepare evidence to be submitted at the hearing in support of Phillips' claim that the lease had been terminated according to its terms. Upon the record available at that time, Bankruptcy Judge Buschman went forward. Taking into account "all the circumstances," the Court cannot say that the Bankruptcy Court's decision violated Phillips' right to due process of law. The record reveals not only that the overnight mail service ordered by the Bankruptcy Judge was "reasonably calculated ... to apprise [Phillips] of the pendency of the action and afford [her] an opportunity to present [her] objections,"[25] but that Phillips actually was notified of the hearing and did have an opportunity to prepare her case. That Phillips failed to take advantage of this opportunity does not render unconstitutional the Bankruptcy Court's decision to proceed. A reading of the record leaves no room to doubt that the Bankruptcy Judge was on firm

---

**21.** Appellant's Brief at 12.

**22.** Record of February 27, 1984, Proceeding at 24, 27–28.

**23.** Upon the argument of the appeal, Cook asserted that a letter was sent by Phillips in 1983 purporting to terminate the debtors' rights under the lease. He conceded, however, that this letter was not submitted to the Bankruptcy Court, a position supported by the record.

**24.** *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (quoting *Mullane*); *In re DCA Dev. Corp.,* 489 F.2d 43, 46 (1st Cir.1973) (applying *Mullane* to Chapter 11).

**25.** *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

foundation in finding that the landlord and her attorney were engaged in delaying tactics and that their actions were calculated attempts to defeat the consolidated debtors' rights under the lease.

■ Phillips' fourth essential ground for appeal rests on alleged failures to comply with the Rules of Bankruptcy Procedure. In particular, she claims that the proceeding to determine whether the lease was in full force and effect was an "adversary proceeding" as defined in the Rules.[26] In pertinent part, the Rules provide that an "adversary proceeding" includes "any proceeding instituted by a party before a bankruptcy judge to ... determine the validity, priority, or extent of a lien or other interest in property."[27] An adversary proceeding is properly commenced "by filing a complaint with the court."[28] Upon commencement, "the bankruptcy judge shall set a date either for trial or for a pre-trial conference and shall forthwith issue a summons and notice of trial or pre-trial conference."[29] The summons, complaint, and notice of trial may be served personally, in conformity with Rule 4(d), Fed.R.Civ.P., or by first-class mail to the defendant's "dwelling house or usual place of abode."[30] The record reveals that no summons or complaint were ever filed with the Bankruptcy Court in connection with the application of the custodial receiver to have the lease held in full force and effect, and, in turn, neither Phillips nor her attorney were served with the required papers. Phillips asserts that these defects render the March 1 decision void.

Although the custodial receiver does not fully meet the objections raised by Phillips to the procedures employed in adjudicating Overmyer's status vis a vis the leasehold, the Court is convinced, for three reasons, that the alleged defects do not render the Bankruptcy Judge's decision void. First, the Court is not persuaded that the rules governing adversary proceedings were intended to apply in the instant situation, in which what was tested was the Bankruptcy Court's jurisdiction to act with respect to the leasehold, that is, its power to declare the lease in full force and effect. This jurisdictional inquiry was within the Bankruptcy Judge's competence and was designed to determine, preliminarily, whether Phillips' "adverse claim" to the leasehold interest was "real and substantial or merely colorable."[31] Had Phillips made the required threshhold showing, the Bankruptcy Court would have been compelled to relinquish jurisdiction in favor of a court of competent jurisdiction for a plenary adjudication of the interests of the parties.[32]

Second, prior to the adoption of the Rules it was long-recognized that the Bankruptcy Court was authorized to test its summary jurisdiction to act with respect to the debtor's property by compelling a potential adverse claimant to show cause.[33] Had the authors of the Bankruptcy Rules intended to prohibit this practice, they would have stated so clearly. Neither the Rules, nor the advisory committee notes, however, evince such a clear intention.

Third, even assuming that the rules governing adversary proceedings apply to the application of the custodial receiver, those rules provide that "[s]ervice of process ... shall be effective notwithstanding an error in the papers served or in the manner of

---

26. Fed.R.Bankr.P. 701. Bankruptcy Rule 11–61 applies Rules 701–82 to analogous proceedings arising in a Chapter 11 case.

27. Fed.R.Bankr.P. 701.

28. *Id.* 703.

29. *Id.* 704(a).

30. *Id.* 704(b), (c).

31. *Harrison v. Chamberlin,* 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926).

32. Because the preliminary inquiry into jurisdiction does not purport to address the merits of a real and substantial adverse claim, it significantly differs from a proceeding "brought by the trustee or other chapter officer to *recover* property being adversely claimed by a third party," *In re Schrimp,* 17 B.R. 36, 38 (Bkrtcy.W.D.Ky.1981) (emphasis added), such as a proceeding to avoid a lien, *see* Fed.R.Bankr.P. 701.

33. *See Shea v. Lewis,* 206 F. 877, 881 (8th Cir. 1913); *In re Friedman,* 161 F. 260, 262 (2d Cir.1908); *In re Kane,* 131 F. 386, 387 (N.D.N.Y. 1904).

proof of service if no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued." [34] Phillips advances no substantial right that was violated by the mere failure to include a summons, complaint, and formal notice of trial along with the order to show cause that was served upon her and her California counsel.

For the reasons stated above, the Court finds that Phillips' four principal grounds for appeal are without merit. To the extent Phillips asserts other grounds for upsetting the decision of the Bankruptcy Judge, the Court finds them to be without merit as well.

The judgment of the Bankruptcy Court is therefore affirmed.

So ordered.

---

**34.** Fed.R.Bankr.P. 704(h). As our Court of Appeals has only recently reiterated, "[a] bankruptcy court has broad equitable powers which may be invoked to see 'that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'" *In re Vintero Corp.,* 735 F.2d 740, 742 (2d Cir.1984) (quoting *Pepper v. Litton,* 308 U.S. 295, 304–05, 60 S.Ct. 238, 244–245, 84 L.Ed. 281 (1939)).