**In the Matter of RESERVES DEVELOPMENT CORPORATION and RDC Monongah, Inc., Debtors.**

**Barbara C. JEFFRIES and Melvin P. Ketter, Plaintiffs-Appellees,**

v.

**Chauncey H. BROWNING, Attorney General of the State of West Virginia, et al., Defendants-Appellants.**

**No. 86–0508–CV–W–5.**

United States District Court, W.D. Missouri, W.D.

Aug. 22, 1986.

John J. Williams, Kansas City, Mo., for Jeffries.

Irving Blezer, Smith, Gill, Fisher & Butts, Kansas City, Mo., for Ketter.

J. Bradley Russell, Donald L. Darling, Deputy Atty. Gen., Charleston, W. Va., for Browning, et al.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This is an appeal from a Memorandum Opinion and Order of Bankruptcy Judge Joel Pelofsky, wherein that Court enjoined appellants from attaching property, located in West Virginia and owned by the debtor, and in which plaintiffs-appellees had acquired a pre-Bankruptcy security interest. Appellants, the West Virginia Attorney General's office and Commissioner of Labor, allege a number of issues on appeal, some novel and some not so novel, most of which challenge the constitutionality of the Bankruptcy Court's order. However, for the following reasons, this Court affirms the Bankruptcy Court's order.

## I. Statement of Facts

The facts in this case are generally undisputed. On April 12, 1983, two corporations, Reserve Development Corporation and R.D.C. Monongah, Inc. ("Debtors"), filed a Chapter 11 Reorganization petition under Title 11, U.S.C., in the United States Bankruptcy Court for the Western District of Missouri. After filing the petition, the debtors continued their business operations, which included the operation of a coalwashing facility in Marion County, West Virginia, as a debtor in possession. Plaintiffs-appellees, Jeffries and Ketter, held a security interest in certain coalwashing units located on the facility.

On October 5, 1984, the West Virginia Attorney General's office filed suit in Kanawha County, West Virginia, on behalf of the West Virginia Commissioner of Labor and eleven of the debtors' employees, seeking recovery of unpaid wages for the months of April, May, June, July and August of 1983, pursuant to the West Virginia Wage Payment and Collection Act, W.Va. Code §§ 21–5–1 et seq. On November 5, 1984, appellants obtained a prejudgment attachment of the coalwashing facility. The record is unclear as to whether appellants had any notice of the Chapter 11 proceeding at the time of the attachment.

Prior to the attachment, appellees Jeffries and Ketter sought and obtained relief from the automatic stay in the Bankruptcy Court, and a public sale was held on October 31, 1985 in which appellees became the buyers of the coalwashing units.

On September 20, 1985, appellees Jeffries and Ketter filed an application with the Bankruptcy Court seeking to enjoin the attachment and continued state court action, and sought the issuance of civil contempt citations against appellants for violation of the Chapter 11 automatic stay. The Bankruptcy Court entered an order on September 27, 1985, directing appellants to appear and show cause why the requested relief should not be granted. The show cause hearing was held and evidence was taken on October 21, 1985. The Bankruptcy Judge, in overruling appellants' motion to dismiss for lack of jurisdiction, insufficient service of process and inadequate standing on the part of appellees Jeffries and Ketter, concluded that the appellant's attachment of the coalwashing facility was in violation of the automatic stay, and thus, the attachment was void. Consequently, the court enjoined appellants from attaching the property without relief from the automatic stay and, additionally, enjoined the continuation of the state court action by appellants as to the wages allegedly owed for the month of April, 1983. However, the Bankruptcy Court ruled that appellants could proceed to judgment on allegations of wage payments due for the months of May, June, July and August of 1983. The court also concluded that appellants' violation of the automatic stay was not a willful one and, thus, denied appellees' motion for contempt against appellants.

Appellants have challenged the order of the Bankruptcy Court by raising the following issues on appeal:

(1) That the Bankruptcy Court lacked both subject matter and personal jurisdiction, and, thus, the Bankruptcy judge erred in not dismissing the show cause proceeding;

(2) That appellees Jeffries and Ketter lacked standing to bring this proceeding;

(3) That since the West Virginia civil action arose after the filing of the Chapter 11 petition, the § 362 automatic stay is inapplicable;

(4) That even if the § 362 automatic stay is applicable, the West Virginia civil action is an exercise of the state's police power and, thus, falls within the § 362(b)(4) governmental unit exemption;

(5) That service of process on the West Virginia Attorney General and the Commissioner of Labor was inadequate.

## II. Discussion

### A. Jurisdiction

▮ Appellants contend that the Bankruptcy Court lacked personal jurisdiction over the West Virginia Attorney General and Commissioner of Labor, as the named defendants, because the defendants-appel-

lants lacked the requisite minimum contacts with the State of Missouri. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Appellants urge this Court to adopt, as a limitation on a federal court's exercise of personal jurisdiction, the 14th Amendment limitations on personal jurisdiction as set out in *International Shoe*. In other words, appellants argue that since the defendants have no connection with the State of Missouri, then the federal Bankruptcy Court's exercise of personal jurisdiction violates the 5th Amendment Due Process Clause. While appellants concede that the federal courts have not given a definitive answer on the question of whether a defendant must have "minimum contacts" with the federal forum, they have cited to this Court federal cases which have hinted that such limitations are applicable to federal courts under the 5th Amendment Due Process Clause. *See Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 702–03, 102 S.Ct. 2099, 2104–05, 72 L.Ed.2d 492 (1982); *Lone Star Package Car Co., Inc. v. B & O Railroad Co.*, 212 F.2d 147 (5th Cir.1954).

However, there is no need for this Court to decide this particular question since the Supreme Court has made clear that, for 5th Amendment Due Process purposes, a state is not a "person" under the 5th Amendment. *See State of South Carolina v. Katzenbach*, 383 U.S. 301, 323, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966). ("The word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union ...") *See also State of Oklahoma, etc. v. Federal Energy Regulatory Comm.*, 494 F.Supp. 636 (W.D.Okl. 1980). In this case, appellants have acknowledged in their brief that a suit against defendants in their official capacity is a suit against the state, and the Supreme Court has held that a state does not have standing "as parent of its citizens to invoke these constitutional provisions against the Federal Government, the ultimate *parens patriae* of every American citizen." *South Carolina v. Katzenbach*, 383 U.S. at 324,

86 S.Ct. at 816. Thus, since the State of West Virginia has brought suit to enforce its Wage Payment and Collection Act on behalf of its citizens, then this Court holds that the appellants lack standing to raise 5th Amendment Due Process as a bar to the Bankruptcy Court's exercise of personal jurisdiction.

■ Even if appellants did fall within the 5th Amendment Due Process clause, the federal courts have consistently held that "[t]he power of the Bankruptcy Court to issue effective process derives from congressional enactment, and is not limited by the fourteenth amendment's restrictions on the power of state courts to issue process beyond state borders." *Matter of D.H. Overmyer Co., Inc.*, 40 B.R. 990, 994 (S.D. N.Y.1984); *see also Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Railroad Co.*, 294 U.S. 648, 682–83, 55 S.Ct. 595, 608–09, 79 L.Ed. 1110 (1935); *In re New York, New Haven and Hartford R.R. Co.*, 457 F.2d 683, 688 (2d Cir.1972), *cert. denied*, 409 U.S. 890, 93 S.Ct. 111, 34 L.Ed.2d 147 (1972).

■ Appellants' claim that the Bankruptcy Court lacked subject matter jurisdiction is equally meritless. The federal courts have held that the Bankruptcy courts have exclusive jurisdiction over the debtor and its property, wherever it is located. *See State of Missouri v. U.S. Bankruptcy Court, etc.*, 647 F.2d 768, 774 (8th Cir. 1981); *In re Desmarais*, 33 B.R. 27 (Bankr. Me.1983). Thus, this Court holds that since the coalwashing facility was property of the bankruptcy estate at the time the West Virginia action and attachment was commenced, then the Bankruptcy Court had the power to adjudicate any claims to that property absent relief from the automatic stay. *See Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 738 F.2d 209, 211 ("[W]here a court of competent jurisdiction has, through its officers, taken property into its possession, the property is thereby withdrawn from the jurisdiction of other courts. Having possession, the court may not only issue all writs necessary to protect its possession

from physical interference, but is entitled to determine all questions respecting the same.")

■ Appellants also contend that the suit to enjoin the West Virginia Attorney General and Commissioner of Labor is barred by the Eleventh Amendment of the United States Constitution. This Amendment provides that:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any Foreign State."

In interpreting the Eleventh Amendment, the courts have concluded that where a private citizen sues a state for damages, past debts or retroactive relief, then that suit is barred whether the suit is brought in law, equity, or admiralty. *See Papasan v. U.S.*, 756 F.2d 1087 (5th Cir.1985). However, in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the court held that the Eleventh Amendment does not bar suit in federal court against a state official for the purpose of obtaining injunctive relief against the official's enforcement of a state law alleged to be unconstitutional. Appellants argue that since no unconstitutional activity is alleged on the part of West Virginia officials, then *Ex Parte Young* is inapplicable. Appellants' narrow interpretation of *Ex Parte Young* has been rejected in more recent federal court decisions wherein the courts have held that the Eleventh Amendment does not bar a federal court from enjoining state officials to conform their conduct to the requirements of federal law. *Barnes v. Cohen*, 749 F.2d 1009, 1019 (3rd Cir.1984) ("A state official, however, will be stripped of his authority if he acts in violation of the United States Constitution or federal statutory law."); *Helms v. McDaniel*, 657 F.2d 800 (5th Cir.1981), rehearing denied, 664 F.2d 291, *cert. denied*, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Thus, the resolution of appellants' 11th Amendment claim turns on whether the State of West Virginia violated federal law when it attached the debtor's coalwashing facility.

The Bankruptcy judge concluded that under Section 362 of the Bankruptcy Code, the attachment of the coalwashing facilities was done in violation of the § 362(a)(4) automatic stay. Appellees petitioned the Bankruptcy Court for injunctive relief based on this automatic stay. No form of state law relief was sought, only federal injunctive relief and federal civil contempt. Thus, the West Virginia officials clearly violated federal law when they commenced the wage enforcement proceeding and attachment.

Although at least one district court has held that the 11th Amendment barred a Chapter 7 debtor from suing a state commission in federal court, the court's reasoning apparently turned on the fact that the suit was based exclusively on state law and not federal law. *See In Re Begley*, 46 B.R. 707 (E.D.Pa.1984); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) (*Young* exception to 11th Amendment bar is inapplicable in a suit against state officials on the basis of state law).

Unlike the debtor-plaintiff in *In Re Begley*, who could sue in state court vindicate its rights in state court, appellees in this case could not sue in West Virginia to enforce the automatic stay provisions of § 362 since such enforcement and equitable relief lies within the exclusive jurisdiction of the federal courts. *See In Re Tom Carter Enterprises, Inc.*, 44 B.R. 605 (C.D. Cal.1984).

Therefore, this Court holds that the 11th Amendment does not bar a Bankruptcy court from granting prospective injunctive relief where the relief is based on a state's violation of the § 362 automatic stay provisions. Since the order of the Bankruptcy Judge enjoined the continuation of appellants' wage claims and further attachment of the coalwashing facility, both prospective in nature, then appellants cannot raise the 11th Amendment as a bar to the Bankruptcy Court's exercise of jurisdiction and injunctive relief.

### B. *Standing*

■ Appellants further contend that appellees, as secured creditors of property within the debtor's bankruptcy estate, lacked standing to enforce the automatic stay. To support this contention, appellants rely chiefly on decisions in which the courts have denied benefits of the automatic stay to third-party non-bankrupt co-defendants of the debtor-defendant and non-debtor third parties. *See Pitts v. Unarco Industries, Inc.,* 698 F.2d 313 (7th Cir. 1983); *Neubauer v. Owens-Corning Fiberglas Corp.,* 26 B.R. 644 (E.D.Wisc.1983); *In re Autobahn Classics, Inc.,* 29 B.R. 625 (Bankr.S.D.N.Y.1983). Thus, appellants argue that appellees are merely non-debtor third parties that should not be entitled to benefit from the automatic stay since appellees clearly have not raised it for the debtors' benefit.

The Bankruptcy judge rejected appellants' narrow construction of the automatic stay protections and concluded that these protections extend to both the debtor and its creditors. The judge relied on certain Congressional excerpts which noted that:

"The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against debtor's property. Those who acted first would obtain payment of their claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally."

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 340 (1978), U.S.Code Cong. & Ad.News 1978, pp. 5787, 6297.

This Court finds that this legislative history and federal court interpretation of the Bankruptcy Code support the Bankruptcy judge's conclusion that appellees, as secured creditors of the debtor, had standing to seek protection of the § 362 automatic stay.

As noted by appellees, 11 U.S.C. § 1109(b) provides that:

"(b) A party in interest, including the debtor, the trustee, a creditors' committee, and equity security holder's committee, *a creditor,* an equity security holder or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." (emphasis added).

In this case appellees are clearly "parties in interest" under the meaning of the Bankruptcy Code since they have a pecuniary interest that was adversely affected by appellants' attachment of the coalwashing facility. *See In re Kutner,* 3 B.R. 422 (Bankr.Tex.1980). As noted by one Bankruptcy judge:

[T]he basic goal of the new Bankruptcy Code is two-fold. First, the Code protects the debtor from unscrupulous creditors. It prevents them from taking unfair advantage of a debtor while in a vulnerable financial position. Second, and perhaps more importantly in this situation, the new Code protects the rights of all creditors to share equally in the assets of the debtor's estate."

*In re Oak Farms, Inc.,* 37 B.R. 178, 179 (Bankr.D.Minn.1984). *See also In re White Motor Credit Corp.,* 37 B.R. 631, 637 (N.D.Ohio 1984), affirmed 761 F.2d 270 (6th Cir.1985). ("... The stay of proceedings was intended to promote an orderly reorganization or liquidation of the debtor's estate thereby benefiting, secondarily, creditors of the estate ...")

Therefore, this Court holds that the bankruptcy judge correctly concluded that appellees had standing to enforce the automatic stay against appellants.

### C. *Automatic Stay*

Additionally, appellants argue that the controlling automatic stay provision is § 362(a)(1) which provides that:

"Except as provided in subsection (b), ... a petition filed under § 301, 302 or 303 of this title operates as a stay applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that *was* or *could have been commenced before the commencement of the case* un-

der this title, or to recover a *claim against the debtor that arose before the commencement of the case* under this title." (emphasis added.)

The gist of appellant's argument is that since a substantial amount of the wages claimed were incurred *after* the bankruptcy was commenced in April of 1983, then § 362(a)(1) is not applicable, and the automatic stay was not in force at the time of appellants' attachment of the coalwashing facility.

■ The Bankruptcy judge, however, ruled that § 362(a)(1) was not controlling. Rather, the judge concluded that this case was governed by § 362(a)(4) which provides that a petition filed in bankruptcy automatically stays "... any act to *create*, perfect or enforce any lien against the property of the estate." The judge concluded that under this subsection, the time in which the claim arose is irrelevant. This Court agrees.

It appears clear, as a matter of statutory construction, that Congress did not intend for the automatic stay in § 362(a)(4) to be limited in the same way as in § 362(a)(1) since the § 362(a)(1) limiting language was omitted. A number of courts have reached the same conclusion.[1]

■ In this case, appellants sought to attach the debtors' coalwashing unit for the purpose of securing the payment of past-due wage claims. The net effect of such an attachment would be to create a lien on the property and give appellants a priority interest over any intervening creditor pending the outcome of the pending state court action. Thus, appellants' attempt to attach property of the debtors' bankruptcy estate was indeed an act to

"create" or "perfect" a lien on this property, and this Court holds that the Bankruptcy judge correctly applied § 362(a)(4) as the governing provision.

■ Appellants argue that even if § 362 governs, the attachment was not stayed since the exemption in § 362(b)(4) applies. That subsection provides that:

"The filing of a petition ... does not operate as a stay—

(4) *Under subsection (a)(1)* of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

Appellants' argument on this point is meritless for two reasons. First, as noted, this case is governed by § 362(a)(4) and not § 362(a)(1). Thus, since there are no § 362(b) governmental exemptions to the automatic stay under § 362(a)(4), then the attachment was automatically rendered null and void. *See In re Sambo's Restaurants, Inc.*, 754 F.2d 811 (9th Cir.1985); *Matter of Baldwin-United Corp.*, 52 B.R. 541 (Bankr.S.D.Ohio 1985). Second, even if the governmental unit exemption was applicable, as noted by the Bankruptcy Court and pointed out by appellees, that exception only applies where the action is one which affects the public's health, welfare, morals and safety.[2]

As appellees noted, this case is on all fours with *Matter of Napco Graphic Arts, Inc.*, 51 B.R. 757 (Bankr.E.D.Wisc.1985). In that case the State of Wisconsin instituted proceedings to recover unpaid pre-petition wages owed to debtor's employees pursuant to its wage enforcement statute.

---

1. In *Landmark v. Schaefbauer,* 41 B.R. 766 (Bankr.D.Minn.1984), the bankruptcy court held that the act of recording a second mortgage on the debtor's property after the debtor filed his bankruptcy petition, was an act "to perfect a lien" against property of the estate within the meaning of § 362(a)(4). *See also In re Golden Plan of California, Inc.,* 37 B.R. 167 (Bankr.E.D. Cal.1984); *In re Farmers Markets, Inc.,* 36 B.R. 829 (Bankr.E.D.Cal.1984).

2. *See Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768 (8th Cir.1981), *cert. denied,* 454 U.S.

1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982), wherein the court noted that:

"Section 362(b)(4) is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect public, health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in the property of the debtor or property of the estate."

*Id.* at 776, citing Congressman Don Edwards, Chairman, Judiciary Subcommittee, 124 Cong. Record H 11089.

There the Bankruptcy court held that commencement of the bankruptcy proceeding stayed perfection of the wage earner's lien and that the filing of the lien did not fall within the § 362(b)(4) exception since it was an attempt to enforce a pecuniary loss rather than an attempt to enforce a police or regulatory power. *Id.* at 765.

This Court finds *Napco* persuasive and holds that the attempt by appellants to enforce wage claims under West Virginia law was an attempt to redress the pecuniary loss of its citizens, and as such, could not fall into any of the § 362(b) exemptions.

### D. *Service of Process*

Appellants' final point on appeal is that service of process on the West Virginia Attorney General and on the Commissioner of Labor was inadequate. Appellants' contention centers on the fact that, initially, appellees' petition named the former West Virginia Attorney General and former West Virginia Commissioner of Labor as defendants, and appellees caused service of process to be served in the name of those officials. This service was done by means of first class mail as authorized by Bankruptcy Rule 7004 and was mailed to the office of the West Virginia Attorney General. When appellees realized that the named officials were no longer in office, appellees amended their application and had an amended show cause order issued and served. This service was sent in the name of the current West Virginia Attorney General and West Virginia Commissioner of Labor, and was delivered Federal Express to the Attorney General's office. Thus, appellants contend that since the amended order was not sent first class mail as allowed by Rule 7004, then the service was void. Additionally, appellants contend that even if the service is valid, since the West Virginia Attorney General is not authorized to receive service for the Commissioner of Labor, then no effective service was ever made on the Commissioner.

■ The Bankruptcy judge concluded that a public officer sued in his official capacity may be described as a party by his official title rather than his name, and his successor is automatically substituted as a party. *See* Fed.R.Civ.Pro. 25(d)(1)(2); Bankruptcy Rule 7025. In other words, since the original service was validly sent first class mail to the West Virginia Attorney General, then appellants are automatically substituted even if no second amended order and service were served on them. This Court upholds the Bankruptcy judge's determination that the current West Virginia Attorney General and Commissioner of Labor were automatically substituted as parties when appellees served the former Attorney General and Commissioner.

■ Even if the first notice by first class mail was not effective, the second notice, even though sent by Federal Express and technically defective, was sufficient. As noted in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the notice that is required by due process is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. In this case, appellants do not contend they were not apprised of the show cause proceeding. Nor do they claim that they were not afforded ample opportunity to raise any objections. Rather, they claim that since notice by Federal Express was technically defective, then the proceeding was invalid. Courts have been reluctant to read such strictness into the notice provision,[3] and this Court has similar reluctance.

■ As to the issue of whether the West Virginia Attorney General is authorized to receive service on behalf of the Commissioner of Labor, this Court abstains from deciding this issue because the major focus in this case is whether or not the Commissioner did in fact receive notice and

---

**3.** *See Matter of D.H. Overmyer Co., Inc.,* 40 B.R. 990 (S.D.N.Y.1984) (service by overnight express mail was sufficient under *Mullane* standard).

had an adequate opportunity to raise objections. Since the Commissioner did not deny receiving the notice actually sent to the West Virginia Attorney General's office, and appeared in and presented evidence at the show cause hearing, then no prejudicial error was committed in sending service to the Attorney General's office. *See Jaffe v. Federal Reserve Bank of Chicago,* 100 F.R.D. 443, 455 (N.D.Ill.1983) ("... When notice is actually given a person, it matters not a whit whether he or she receives it at home, at work, at play or anywhere else.")

For the foregoing reasons, it is hereby

ORDERED that the decision of the Bankruptcy Court is affirmed. It is further

ORDERED that each party bear its own costs.