In re OAK FARMS, INC., Oak Farms Service Co., Curtis H. Johnson and Gloria J. Johnson, d/b/a Oak Farms Livestock, Debtors.

Curtis H. JOHNSON and Gloria J. Johnson, d/b/a Oak Farms Livestock and Oak Farms, Inc., and Oak Farms Service Co., Plaintiffs,

v.

FIRST NATIONAL BANK OF MONTEVIDEO, United States of America by the Farmers Home Administration, Rosen Livestock, Inc., Howe Chemical Company, Inc., and N–Ren Corporation, Defendants.

Bankrutpcy Nos. 3–81–1920 to 3–81–1922. Adv. No. 3–81–0329.

United States Bankruptcy Court, D. Minnesota.

Feb. 27, 1984.

## ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

This matter is before the Court on remand from the United States District Court for the District of Minnesota.

### I

The relevant facts are undisputed. The Debtors are the principal officers and shareholders of Oak Farms, Inc. and Oak Farms Service Co., both Minnesota corporations engaged in agricultural business pursuits. In 1978 Oak Farms, Inc. executed a mortgage on certain parcels of real estate located in Yellow Medicine and Lacqui Parle, Minnesota, to secure a $300,000.00 promissory note in favor of First National. In 1979 Oak Farms, Inc., Oak Farms Service Co., and the Johnsons executed a second mortgage to First National on the same property to secure 19 additional promissory notes totaling approximately $650,000.00. Each mortgage contained a clause allowing First National to sell the mortgaged property at public auction in the event of default. The

legal description of the property is attached and incorporated as a part of this order as Exhibit A.

Following the Debtors' default in September of 1980, First National commenced foreclosure proceedings. A sheriff's auction was held on October 31, 1980 in conformity with the requirements of Minnesota Statutes. At the auction, First National purchased the mortgaged property for the sum of $566,355.34. Pursuant to Minnesota law, the Debtors then had one year in which to redeem the property by tendering the sale price plus interest from the date of the sale. M.S.A. 580.23(2).

On October 9, 1981 the Debtors filed a voluntary Chapter 11 bankruptcy case. On October 16, 1981 the Debtors initiated an adversary proceeding in the bankruptcy court seeking an order staying the running of the redemption period. This Court, by an Order dated October 20, 1981, enjoined First National Bank of Montevideo (hereinafter the "Bank") from taking any further action to foreclose its mortgage on the property and, pursuant to its broad equitable powers under Section 105 of the Bankruptcy Code, stayed the expiration of the redemption period.

## II

[1] In issuing the order staying the running of the redemption period, the bankruptcy court recognized that the basic goal of the new Bankruptcy Code is two-fold. First, the Code protects the debtor from unscrupulous creditors. It prevents them from taking unfair advantage of a debtor while in a vulnerable financial position. Second, and perhaps more importantly in this situation, the new Code protects the rights of all creditors to share equally in the assets of the debtor's estate.

The bankruptcy judge found that "an exigency exists, and that the Debtors have substantial equity in [the] real property." This equity, through the statutory equity of redemption, passed to the Debtors' estate upon filing the bankruptcy petition. In order to protect the equity for the benefit of *all* the creditors, the Court exercised its broad equitable powers under Section 105. The Court recognized that Section 108(b) automatically extended the redemption period for a period of 60 days. However, the particular individualized problems of a financially-troubled farm debtor created a situation in which the 60-day extension under Section 108(b) was inadequate to protect the interest of all of the creditors. This period was not enough to protect the "substantial equity in [the] real property" for the benefit of all the creditors of the estate. The Court refused to allow one creditor to, in effect, obtain a large windfall from the estate in abrogation of the rights the other creditors.

The order was appealed to the United States District Court for the District of Minnesota and on March 17, 1982 Diana E. Murphy, J., affirmed the Order. 19 B.R. 651.

■ A further appeal was taken to the United States Court of Appeals for the Eighth Circuit. In an opinion filed October 11, 1983 [1], the Court of Appeals held that, absent fraud, mistake, accident, or other erroneous conduct, the equitable powers of the Bankruptcy Court under Section 105 "may not be invoked to toll or suspend the running of a statutory period of redemption." The Court of Appeals further held that the 60-day extension under Section 108(b) controls the bankruptcy court's power to extend the period of redemption. Therefore, as of December 8, 1981 "full title" to the property at issue in the adversary proceeding "vested automatically in [the Bank] in accordance with Minnesota law." The Court of Appeals stated that courts should not interfere with "vested state rights," overlooking the fact that a Section 108(b) extension has precisely that effect. The Code is replete with provisions which alter "vested state property rights." (See, e.g., 11 U.S.C. 362, 523, 544, 545, 547, 548, 549).

---

1. *Johnson v. First National Bank of Montevideo, Minnesota,* 719 F.2d 270 (8th Cir.1983), *Cert. denied* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1983).

The case was then remanded to the district court on February 3, 1984 for further proceedings consistent with the opinion of the Court of Appeals. By an Order dated February 7, 1984, the District Court remanded the matter to this Court for further proceedings consistent with the opinion of the Court of Appeals.

NOW, THEREFORE, based on the foregoing and the Court being fully advised in the premises:

IT IS ORDERED that this Court's Order of October 20, 1981 be and the same is hereby vacated.

## EXHIBIT A

### TO ORDER IN ADVERSARY PROCEEDING NO. 81–0329

Property located in the County of Yellow Medicine, State of Minnesota described as follows, to-wit:

The Southeast Quarter (SE ¼) of Section 2, Township 115, Range 42; the South One-half of the Southeast Quarter (S ½ SE ¼), and the North One-half of the Southwest Quarter (N ½ SW ¼), of Section 11, Township 115, Range 42; the West One-half of the Northeast Quarter (W ½ NE ¼), and the West One-half of the Southwest Quarter (W ½ SW ¼), of Section 12, Township 115, Range 42; the Northwest Quarter (NW ¼) of Section 11, Township 115, Range 42; The East One-half of the Northeast Quarter (E ½ NE ¼), of Section 7, Township 116, Range 41; the East One-half of the Southeast Quarter (E ½ SE ¼), of Section 6, Township 116, Range 41; the East One-half of the Southeast Quarter (E ½ SE ¼), of Section 7, Township 116, Range 41; The South One-half of the Southwest Quarter (S ½ SW ¼), of Section 29, Township 116N, Range 42W; and the North 40 acres of the West 120 acres of the Northwest Quarter (NW ¼) of Section 14, Township 115, Range 42.

And the tracts of land lying and being in the County of Lac qui Parle, State of Minnesota, described as follows, to-wit:

The Northeast Quarter (NE ¼) of Section 34, Township 116N, Range 42W; the Northwest Quarter (NW ¼) of Section 32, Township 116N, Range 42W; and the South One-half of the Southwest Quarter (S ½ SW ¼) of Section 11, Township 115, Range 42; and an undivided half interest in East Half of the Southeast Quarter (E ½ SE ¼), Section 36, Township 116N, Range 43W, Lac qui Parle County,

Including easements of records and all appurtenances.