**In re PRAIRIE TRUNK RAILWAY, Debtor.**

**Bankruptcy No. 85 B 09421.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 5, 1990.

Leonard Groupe, Groupe & Katz, Chicago, Ill., for Prairie Trunk Ry., debtor.

William H. Gifford, Jr., Shefsky & Forelich, Ltd., Chicago, Ill., for Butler/Binion Group, Ltd.

David G. Lynch, Rudnick & Wolfe, Chicago, Ill., for Gallatin County State Bank.

Douglas J. Lipke, Keck Mahin & Cate, Chicago, Ill., for Creditors' Committee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion for contempt for violation of the automatic stay and for sanctions filed by Butler/Binion Group, Ltd. ("Butler/Binion") against Gallatin County State Bank (the "Bank"). For the reasons set forth herein, the Court having considered all of the pleadings and evidence adduced at trial, hereby denies the relief sought. The Court holds in this case of apparent first impression that the cause of action created by 11 U.S.C. § 362(h) is available only to debtors or their pre-petition creditors, and does not provide a remedy to third parties not protected by the scope of the automatic stay pursuant to 11 U.S.C. § 362.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (*O*).

## II. FACTS AND BACKGROUND

Most of the relevant facts are not in dispute and have been stipulated to by the parties. In January 1985, Prairie Trunk Railway (the "Debtor") executed a promissory note to the Bank in a principal amount of over $30,000.00, evidencing its indebtedness to the Bank. The Debtor granted the Bank a security interest in items of equipment including certain railroad cars. The security interest was subsequently perfected by the filing of a financing statement. On July 25, 1985, the Debtor filed a Chapter 11 petition. The Debtor is an Illinois corporation which was in the business of operating a railroad. The Debtor continued to manage its affairs as a debtor in possession but has not operated or conducted its railroad business since the filing of the case. In September 1985, the Bank filed its secured proof of claim.

Commencing in September 1986 and continuing through November 1986, by written correspondence and telephone conversations with the attorney for the Debtor, the Bank's attorney requested permission for the Bank to foreclose its security interest in the subject collateral. On November 19, 1986, the Debtor advised that it did not object to the Bank's request. The Debtor's attorney further stated that the Bank need not move to modify the automatic stay to do so. This advice was subsequently confirmed by letter. Thereafter, the Bank and the Debtor had continuing communications concerning the disposition of the collateral. For a time in January 1988, the Debtor's president resisted the Bank's efforts to take possession of the collateral. The Bank's attorney gave written notices of intent to sell various railroad cars in July, August, November and December 1988. The Debtor made no objections. These sales by the Bank grossed proceeds totalling $21,000.00.

In February 1989, R. Robert Butler ("Butler") the president of Butler/Binion, made an inspection of the Debtor's assets in connection with a potential submission of a bid. During Butler's inspection, he observed one locomotive, one caboose, two covered coal hopper cars, three steel boxcars, three flat-cars, and nine covered grain hopper cars. Approximately one week later, Butler/Binion submitted a written offer to purchase all of the Debtor's assets including "miscellaneous rolling stock." However, the offer was not accepted. Thereafter, in March 1989, the Debtor filed an application with the Court for leave to sell all of its tangible property. This resulted in a public auction on April 12, 1989, at which time Butler/Binion made the highest bid. At no time did either the Debtor or Butler/Binion more particularly describe or identify the specific items of rolling stock.

Subsequently, on April 20, 1989, the Court entered an Order authorizing the sale of the Debtor's real estate and tangible personal property to Butler/Binion for the sum of $4,150,000.00. The sale Order provided that any and all liens asserted against the assets to be sold shall attach to the sale proceeds. Sometime after the sale but prior to closing, Butler/Binion learned of the Bank's actions in selling its interest in the collateral in 1988 and that the Bank had a security interest in same. Notwithstanding such discoveries by Butler/Binion, it proceeded to close the sale transaction with the Debtor. On May 9, 1989, the Debtor executed a bill of sale which provided in part that Butler/Binion could raise any issue with respect to whether any rolling stock in possession of the Debtor on the auction date was sold to Butler/Binion and should have been specifically included in the sale. The bill of sale failed to specify the individual items of rolling stock included among the properties sold. Butler/Binion obtained some other items of rolling stock from the Debtor which it later resold. On July 27, 1989, a subsequent order was entered on the motion of Butler/Binion, without notice to the Bank, clarifying the April 20, 1989 Order (the "clarifying Order"). The clarifying Order provided that the Debtor was directed to sell to Butler/Binion all of the rolling stock in its possession on or after April 12, 1989. In addition, it granted Butler/Binion the right to seek relief from the Debtor or any third party in the event there was any claimed improper transfer of rolling stock either prior or subsequent to April 12, 1989.

At all relevant times from 1985 through 1988, Butler/Binion was neither a creditor of the Debtor nor its estate, and had no claim of interest in any of the collateral which was subject to the Bank's security interest. At no time, however, did the Bank formally move the bankruptcy court for relief from the automatic stay or obtain an order modifying the automatic stay in order to allow it to proceed with its sales of the collateral.[1]

## III. THE MOTION FOR CONTEMPT AND FOR SANCTIONS

On October 30, 1989, Butler/Binion filed the instant motion seeking a finding

---

1. The Honorable Charles B. McCormick was originally assigned this case in 1985. Thereafter, the case was reassigned to the Honorable Robert E. Ginsberg on January 7, 1986. Subsequently, on February 9, 1988, it was again reassigned to this Judge.

of civil contempt against the Bank for its violation of the automatic stay pursuant to section 362 and seeking sanctions under subsection (h).[2] Butler/Binion asserts that the Bank's actions in taking possession and selling its collateral without Court approval constituted a willful and knowing violation of the automatic stay and hence are void. Butler/Binion seeks to recover $62,500.00 in actual damages plus costs, attorney's fees and punitive damages.

The Bank admits it conducted the sales of the collateral, but denies that it physically participated in the removal of same. The Bank contends that the Debtor's waiver of the benefits of the automatic stay and effective consent to its actions provides a further defense to the relief sought. Moreover, the Bank asserts that Federal Rule of Bankruptcy Procedure 4001(d) which provides that agreements for modification of the automatic stay must first be approved by the bankruptcy court, did not become effective until August 1, 1987, a date after the agreement between the Debtor and the Bank for modification of the stay. As a threshold defense, the Bank contends that only the Debtor or a pre-petition creditor of the estate has standing to seek relief under section 362(h). Neither the Debtor nor any pre-petition creditor of the estate has complained of injury as a result of the Bank's acts. Consequently, the Bank argues that because Butler/Binion had no claim to or interest in the collateral before the sales of the remaining assets in the spring of 1989, it lacks standing to invoke section 362(h). Lastly, the Bank contends its actions in selling the collateral took place prior to Butler/Binion's purchase of any assets from the Debtor. Thus, the Bank denies that its actions proximately caused any damage to Butler/Binion. The Bank claims that the Debtor failed to advise Butler/Binion of its agreement with the Bank.

Moreover, the Bank alleges that Butler/Binion admittedly knew of the Bank's actions and claims prior to its closing with the Debtor in May, 1989, but closed the sale notwithstanding such knowledge without seeking a credit against the sale price.

Butler/Binion replies that only a bankruptcy court can authorize relief from the automatic stay and that the Debtor's waiver of the benefits of the automatic stay is an insufficient defense. Moreover, Butler/Binion contends that the Bank's disposition of the collateral in 1988 occurred after the effective date of the amendments to Bankruptcy Rule 4001(d).

The trial was held on February 21, 1990. At that time, the parties submitted certain evidence depositions, which were admitted into evidence by stipulation. The parties prepared and submitted written closing arguments in March 1990. The matter was then taken under advisement.

## IV. DISCUSSION

The matter raises two threshold issues: 1) did the Bank willfully violate the automatic stay; and 2) whether the remedies afforded by section 362(h) are available to Butler/Binion or whether it lacks standing to recover under that section. The Court holds that the Bank's actions constitute a willful violation of the automatic stay. The Court further holds that the remedies afforded by section 362(h) are not available to Butler/Binion because it is not a debtor or a pre-petition creditor for whose respective benefits the automatic stay is conferred. Thus, Butler/Binion is not entitled to any relief pursuant to section 362(h).

## A. THE AUTOMATIC STAY

Pursuant to section 362(a)(1), the filing of a petition in bankruptcy operates as an automatic stay of the commencement of

---

**2.** The relief sought references "sanctions" and "contempt." The damage remedies afforded by section 362(h) are neither sanctions nor based on contempt of court. No order of this Court has been allegedly violated so contempt proceedings under Bankruptcy Rule 9020 are inappropriate and unnecessary. The contempt cases cited by Butler/Binion were decided prior to the 1984 amendments adding section 362(h) to

the Bankruptcy Code. Butler/Binion has expressly invoked section 362(h) and the alleged violations of the Congressionally mandated automatic stay of section 362(a) are the central focus of this matter. This procedural distinction is consistent with the Court's Opinion rendered in *In re Price,* 103 B.R. 989 (Bankr.N.D.Ill. 1989).

any actions to recover a claim against the debtor that arose before the commencement of the case. Subparagraph (a)(3) prohibits any act to obtain possession of or exercise control over property of the estate. Subparagraph (a)(4) further prohibits acts to enforce any lien against property of the estate. Moreover, subparagraph (a)(5) stays any act to enforce any lien against property of the debtor to the extent that such lien secures a claim that arose before the commencement of the case.

Agreements modifying the automatic stay are governed by Bankruptcy Rule 4001(d). Pursuant to Bankruptcy Rule 4001(d), a motion for the modification or termination of the stay must be served upon a committee or its authorized agent, or if no committee has been appointed, on the creditors required to be listed under Bankruptcy Rule 1007(d). Fed.R.Bankr.P. 4001(d)(1). If no objections are filed, the court may enter an order approving or disapproving the agreement, without conducting a hearing. Fed.R.Bankr.P. 4001(d)(3). Subsection (d) to Bankruptcy Rule 4001 was added by the 1987 amendments and became effective August 1, 1987. Bankruptcy Rule 4001(d) provides a mechanism which protects the interests of all creditors whose interest in proper distribution of the estate may be harmed by an undisclosed agreement to modify the stay between the debtor and a single creditor.

The Bank does not dispute that its acts in selling its interest in the various railroad cars were performed to enforce its perfected security interest. It is also undisputed that the Bank's actions were taken without Court approval. Such actions constitute a violation of the automatic stay and were performed after the effective date of the 1987 amendments to Bankruptcy Rule 4001. The Bank's actions were deliberately done with knowledge that the bankruptcy case was pending. The Bank had knowledge of the pending bankruptcy, thus its actions were willful. *See In re Forty–Eight Insulations, Inc.,* 54 B.R. 905, 909 (Bankr.N.D.Ill.1985); *In re Allen,* 83 B.R. 678, 681 (Bankr.E.D.Mo.1988); *In re Wagner,* 74 B.R. 898, 903 (Bankr.E.D.

Penn.1987). The Court did not allow nor was it aware of the unauthorized actions of the Bank, although the Bank's actions were taken with the Debtor's effective consent. The Bank should have filed a motion for relief from the automatic stay and received an appropriate order of Court under section 362(d)(1) or (d)(2) before proceeding to liquidate its interest in the collateral. *See also* Fed.R.Bankr.P. 4001(d). Creditors who act without court approval do so at their peril and expense. *In re AM International, Inc.,* 53 B.R. 744 (Bankr.M.D.Tenn.1985). This, however, does not mean that every willful violation of section 362 automatically triggers liability under section 362(h).

The intent behind section 362 is principally to protect a debtor by giving him relief from creditors in accordance with the policy of the Bankruptcy Code of affording the debtor an effective fresh start. *See In re Smurzynski,* 72 B.R. 368, 371 (Bankr.N.D. Ill.1987). H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49–50 (1978), U.S.Code Cong. & Ad.News 1978, p. 5787. The automatic stay is also intended to benefit the creditors of the estate. The legislative history for subparagraph (a)(1) states in relevant part:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), U.S.Code Cong. & Ad.News 1978, pp. 5835, 6297.

Butler/Binion, admittedly, is neither a debtor nor a pre-petition creditor for whose benefit the automatic stay was intended.

## B. WILLFUL VIOLATIONS OF THE AUTOMATIC STAY

Section 362(h) provides as follows:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

This section was added by the 1984 amendments to the Bankruptcy Code without the benefit of any legislative gloss. *See* 1984 U.S.Code Cong. & Ad.News 576–606. The language creating the statutory cause of action is confined to an "individual." Thus, one authority concluded that only individuals are protected. 2 Cowans, *Bankruptcy Law and Practice*, § 11.3 at 292 (rev. ed. 1989). Another authority questions whether courts can continue to make awards for willful stay violations in cases of non-individual debtors. 1 Ginsberg, *Bankruptcy: Text, Statutes, Rules*, § 3.01(b) at 200 (2d ed. 1989). A third authority notes that the reasons for the addition of section 362(h) have not been stated, and hence the reasons for limiting its benefits to individuals for making the recovery mandatory are not entirely clear. 2 *Colliers on Bankruptcy*, ¶ 362.12 at 362–75 (15th ed. 1989).

Some courts have interpreted section 362(h) to allow corporations which are not individual debtors to recover damages for willful violations of the stay. *See e.g., Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986); *In re Inslaw Inc.*, 88 B.R. 484 (Bankr.Dist. Col.1987); *In re Nash Phillips/Copus, Inc.*, 78 B.R. 798 (Bankr.W.D.Tex.1987); *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250 (Bankr.D.Conn.1985), *In re NWFX, Inc.*, 81 B.R. 500, 503 n. 3 (Bankr.W.D.Ark.1987). A limited partnership which was a creditor of a related debtor was held to have standing under section 362(h) in the case of *In re Kroh Bros. Development Co.*, 91 B.R. 525, 539 (Bankr. W.D.Mo.1988).

The weight of persuasive case authority is that only a debtor or creditor "may attack any acts in violation of the automatic stay." *In re Brooks*, 79 B.R. 479, 481 (9th Cir. BAP.1987), *aff'd* 871 F.2d 89 (9th Cir. 1989). The Ninth Circuit noted that Congress did not intend to confer rights on parties other than the debtor and creditors for whose benefit the automatic stay was devised. 871 F.2d at 90; *see also In re Globe Investment & Loan Co.*, 867 F.2d 556, 560 (9th Cir.1989). Butler/Binion correctly argues that neither *Brooks* or *Globe Investment* involved specific actions invoking section 362(h) nor was the standing issue addressed. Thus, the challenge raised by the Bank to Butler/Binion's standing under section 362(h) appears to be an issue of first impression.

In all of the cases cited by Butler/Binion, only debtors or creditors received relief under section 362(h). *Homer National Bank v. Namie*, 96 B.R. 652 (W.D.La.1989), allowed use of section 362(h) by one pre-petition creditor against another. This case is the principal authority cited by Butler/Binion. Butler/Binion contends that the injured creditor in *Homer* filed its section 362 action not as a creditor, but rather as the purchaser of the debtor's assets at a court approved sale. However, that court made no such distinction as to the status of the plaintiff as a purchaser.

The Court is of the opinion that such a distinction makes a difference in the result that should be reached in the case at bar. Unlike the victor in *Homer*, Butler/Binion is merely a purchaser from the Debtor, not one of its pre-petition creditors. The creditor in *Homer* defended a standing challenge by claiming that section 362(h) could only be invoked by a debtor. *Id.* at 654. The *Homer* court noted that there was no authority for the proposition that Congress intended to limit the remedy in section 362(h) exclusively to debtors. The court stated that the automatic stay also operates for the benefit of creditor protection. *Id.* citing *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986) and *In re Reserves Development Corp.*, 64 B.R. 694, 699–700 (W.D.Mo.1986), *reversed on other grounds*, 821 F.2d 520 (8th Cir.1987). *Homer* concluded that if Congress intended to limit the remedies of the section to the debtor only, it could have utilized the term "debtor" instead of the term "individual." The *Homer* court was not confronted with the issue of a third party seeking to invoke

the benefit of section 362(h). Butler/Binion merely speculates when it argues that the court in the *Homer* case would have expansively interpreted the language of the section to include other third parties like itself.

The Court in the case at bar, declines to hold that section 362(h) extends its private cause of action to Butler/Binion. *Black's Law Dictionary* (5th ed.1979) defines the term "individual" as follows:

a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a partnership, corporation, or association; but it is said that this restrictive signification is not necessarily inherent in the word, and that it may, in proper cases, include artificial persons.

Butler/Binion is clearly not a natural or a single person so the usual signification or a literal interpretation of the plain meaning of the term would exclude Butler/Binion. The restrictive signification may in proper cases include artificial persons, such as Butler/Binion. An ambiguity exits, therefore, as to the identity of those classes of "individuals" who may invoke the private cause of action created by section 362(h). The polarity of the arguments by able and reasonable counsel for both parties demonstrates the ambiguity in the term.

The Court has considered section 362(h) with reference to traditional intrinsic aids such as the principles of *noscitur a sociis* (associated words), *in pari materia* (same subject matter), *ejusdem generis* (words of the same kind), *expressio unius est exclusio alterius* (entities not specifically enumerated are excluded), and *reddendo singula singulis* (referencing each phrase to its appropriate object). These doctrines are either inapplicable or unavailing to definitively clarify the ambiguous and undefined term. *See generally*, 2A *Sutherland Statutory Construction*, §§ 47.01 *et. seq.* (rev. 4th ed.1984). The section is both remedial and punitive. The Court cannot ascertain a clear legislative intent from the section itself or from other parts of the Bankruptcy Code as to who may invoke relief under section 362(h). Thus, a restrictive interpretation considering the earlier legislative history of section 362 seems appropriate. Unfortunately, the absence of any legislative history for subsection (h) produces uncertainty as to who Congress intended to include or exclude when it used the undefined term "individual." If the statutory reference to "individual" was clear from the section itself, or defined elsewhere in the Bankruptcy Code, the legislative history would not be used to construe it. *See Wilson v. Harris Trust & Savings Bank*, 777 F.2d 1246 (7th Cir.1985).

The Court will follow the dicta in the *Brooks* and *Globe Investment* cases as well as the legislative history of section 362. Those authorities effectively conclude that the classes of parties clearly protected under section 362 are limited to debtors and pre-petition creditors. After extensively researching the law, the Court was unable to find any published opinion extending the remedies afforded under section 362(h) to parties other than the debtor or its pre-petition creditors. Viewed as a whole, the legislative history and evolving case authorities indicate that the principal purpose of section 362(a) was intended to provide a shield, principally for the debtor, to facilitate the concept of a fresh start and to enhance prospects for a reorganization. It logically follows that section 362(h) was enacted to buttress that shield by creating a private right of action for those intended beneficiaries of section 362(a) to fully compensate them for their actual damages and reasonable attorney's fees incurred in defending against willful violations of the stay. The discretionary power and authority conferred upon the courts to award punitive damages serves as a deterrent against egregious behavior and flagrant conduct violating the automatic stay. Thus, Congress has fully provided all the shielding needed by the intended beneficiaries of the automatic stay.

The absence of any legislative history to section 362(h), clearly indicating Congressional intent to expand the protection of section 362(a) beyond those parties for whose benefit the automatic stay has historically been intended, leads the Court to

conclude that it should not judicially expand the classes of protected parties to include third party purchasers such as Butler/Binion. The Court finds nothing in the overall legislative history to section 362 to warrant the conclusion that the addition of section 362(h) by the 1984 amendments was intended to not only provide a remedial shield for pre-petition creditors and debtors, but also to serve as a punitive sword for any other third party such as Butler/Binion. This result conforms with the spirit and purpose of section 362 and its public policy to principally protect the debtor and pre-petition creditors. This section provides benefits not recognized at common law and thus is appropriately strictly construed in the absence of clear intent to the contrary. 3 *Sutherland Statutory Construction*, §§ 61.01–61.06 (rev. 4th ed. 1986). Accordingly, the Court finds and concludes that Butler/Binion is not entitled to recover any damages or its attorney's fees and costs from the Bank under section 362(h). Thus, the Court need not decide or discuss those contested issues.

The Court does not condone or approve of the Bank's unauthorized actions. The Bank has incurred a virtual sanction for its failure to file the appropriate motion and receive the insurance effect of an order modifying the automatic stay. The actual cost to the Bank of taking those actions would have been negligible. The likely significant cost borne by the Bank of its attorney's and witness fees and other expenses incurred in defending this section 362(h) action, serves as a deterrent from future similar conduct. These expenses are not recoverable from any party, but result from the Bank's own acts and omissions in this matter. The Bank's costs of defense of this matter could have been avoided by the simple expedient of filing the appropriate motion sometime between 1986 and 1988, or anytime during the course of these proceedings prior to the 1989 sale by the Debtor.

Whether the Bank's actions in willfully violating the stay are "void" or merely "voidable" makes no difference in the result to Butler/Binion under section 362(h). Issues of whether the Bank's sales to other third parties in 1988 could pass clear title to those purchasers because of its violation of the automatic stay do not arise under section 362(h).

### C. BUTLER/BINION'S REMEDY

Butler/Binion cannot recover under section 362(h) from the Bank. However, it is not without a remedy. Pursuant to the clarifying Order, it can assert a post-petition administrative claim or adversary proceeding or other suit against the Debtor for its claimed losses occasioned by any alleged wrongful conduct, action or omission of the Debtor, its agents, or proceed in some other court of competent jurisdiction against other third parties claimed to be liable for its losses. The purpose of the administrative claims procedure is to allow awards for certain statutorily defined categories of compensation and reimbursement incurred during the pendency of a case. *See generally* 11 U.S.C. §§ 501, 502, 503, and 507. Debtors in possession may be sued with respect to any of their acts or transactions in carrying on business connected with property of the estate. *See* 28 U.S.C. § 959(a).

### V. CONCLUSION

For the foregoing reasons, the Court hereby finds that the Bank has willfully violated the automatic stay pursuant to section 362(a). The Court, however, holds that Butler/Binion does not have standing to recover under section 362(h). Butler/Binion is hereby given leave to file its alleged causes of action and post-petition administrative claims against the Debtor and its estate.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. See written Order.