In re Dennis **CLEMMER**, Sr., Debtor.

**METROPOLITAN LIFE INSURANCE COMPANY**, Plaintiff,

v.

**ALSIDE SUPPLY CENTER OF KNOXVILLE and David A. Lufkin**, Defendants.

Bankruptcy No. 94–33182.
Adv. No. 95–3004.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 15, 1995.

Hunton & Williams, John A. Lucas, Martin B. Bailey, Knoxville, TN, for plaintiff.

David A. Lufkin, Knoxville, TN, pro se and for defendant Alside Supply Center of Knoxville.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, TN, Sp. Atty., for defendant Alside Supply Center of Knoxville with respect to defendants' motion for summary judgment.

## MEMORANDUM ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDERS, AND PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The Plaintiff, Metropolitan Life Insurance Company (MetLife), initiated this adversary proceeding with the filing of its Complaint on January 23, 1995, seeking damages and sanctions for the Defendants', Alside Supply Center of Knoxville (Alside) and David A. Lufkin, alleged civil contempt and intentional, willful violations of the automatic stay. The Plaintiff also seeks to enjoin the Defendants from committing future violations of the automatic stay, including continuing the prosecution of a garnishment action against it in the Chancery Court for Knox County, Tennessee, in connection with Alside's efforts to obtain satisfaction of a prepetition judgment entered against the debtor in a matter styled *Alside Supply Center of Knoxville v. Smith Heritage Siding Co., Inc. & Dennis Clemmer,* No. 107342-3. In response to the Complaint, the Defendants filed a Motion for Summary Judgment and a Motion for Sanctions as to Rule 11 on January 24, 1995.

A hearing was held on January 25, 1995, on an Order to Show Cause entered on January 23, 1995, upon motion of the Plaintiff, requiring the Defendants to appear and show cause why a preliminary injunction should not be issued.[1] At the hearing, the parties announced that the state court hearing that precipitated the Plaintiff's request for a preliminary injunction had been continued from January 30 to March 6, 1995. Consistent with the court's ruling at the January 25, 1995 hearing, an Order was entered on January 26, 1995, requesting, *inter alia*, that the parties submit a proposed agreed order disposing of the Plaintiff's request for a preliminary injunction, and file motions and responses with supporting briefs on issues raised by the parties at the January 25, 1995 hearing regarding allegedly improperly issued subpoenas and potential conflicts of interest. The Order also denied the Defendants' Motion for Summary Judgment, with the exception of a standing issue, and directed the Plaintiff to respond to the Defendants' assertion that it lacked standing to challenge the Defendants' alleged violations of the automatic stay.

The Plaintiff filed a Motion to Quash Subpoena and for Protective Order and a Memorandum in Support of MetLife's Motion to Quash Subpoena and for Protective Order on February 1, 1995; a Memorandum in Response to Defendants' Motion for Sanctions on February 2, 1995; its response to the standing issue raised in the Defendants' Motion for Summary Judgment on February 7, 1995; and a Memorandum in Support of MetLife's Request for Injunctive Relief on February 8, 1995. The Defendants filed their Answer to the Complaint on February 6, 1995; and a Response to MetLife's Motion to Quash Subpoena and for Protective Order and a Brief in Support of Defendants' Contention That a Preliminary Injunction Should Not Issue on February 8, 1995.

The parties did not submit an agreed order disposing of the Plaintiff's request for a preliminary injunction. Instead, as permitted by the January 26, 1995 Order, the parties filed the previously mentioned briefs in support of their respective theories on the preliminary injunction issue on February 8, 1995. A hearing was held on February 9, 1995, to consider the standing issue raised by the Defendants' Motion for Summary Judgment and to hear oral argument on certain of the various other issues raised by the parties, excluding the Defendants' Motion for Sanctions.[2]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (G) (West 1993).

## I

The issues in this adversary proceeding center on the events related to the Defendants' prosecution of a garnishment action initiated against the Plaintiff in the Knox County Chancery Court prior to the debtor's commencement of his bankruptcy case in connection with Alside's efforts to obtain satisfaction of a judgment entered against the debtor in a matter styled *Alside Supply Center of Knoxville v. Smith Heritage Siding Co., Inc. & Dennis Clemmer.* The underlying facts are, of course, set forth in the averments contained in the Plaintiff's Complaint. The Defendants, in their Answer, admit and deny various averments. As the standing issue raised by the Defendants' Motion for Summary Judgment is a purely legal issue, the court will rely only on those facts it believes to be essentially undisputed.

In the state court action, the court awarded Alside a judgment against the debtor on October 31, 1991. The amount of that judgment is not clearly established by the present

---

**1.** The Order to Show Cause erroneously recites that it was entered on January 25, 1995. This clerical error, although correctable under Fed. R.Civ.P. 60(a), has not been raised by any party nor is it material to any issue presently before the court.

**2.** On February 10, 1995, the Defendants, jointly, through Defendant David A. Lufkin, filed a Supplement to Motion for Summary Judgment to which is appended an affidavit and other exhibits apparently relied on by Mr. Lufkin and Alside in support of their summary judgment motion. The "supplemental motion" will not be considered for two reasons: (1) it was filed subsequent to the February 9, 1995 hearing without leave of court; and (2) John A. Walker, Jr., who appeared specially for Alside with respect to the Motion for Summary Judgment did not sign the "supplemental motion."

record. Thereafter, in March 1993, the Defendants commenced garnishment proceedings against MetLife in an attempt to reach certain annuity contracts owned by the debtor and issued by MetLife.[3] As a result of the garnishment proceedings, the Defendants, allegedly without proper notice to MetLife, obtained two garnishment orders, dated October 31 and December 15, 1994, respectively.

On December 29, 1994, allegedly before learning of the commencement of the debtor's bankruptcy case, MetLife forwarded two checks to John Weaver, Clerk and Master of the Chancery Court for Knox County, in alleged satisfaction of the October 31 and December 15, 1994 Orders. As established by the Affidavit of Peter Leone, a staff consultant for MetLife in its accounting department, filed on February 1, 1995, the two checks totaled $83,455.24 and were drawn against the debtor's two annuities. The day before MetLife forwarded the checks to the state court, December 28, 1994, Dennis Clemmer commenced his bankruptcy case under Chapter 7 and faxed a copy of his petition to MetLife, to the attention of Gabriele Prewitt. Allegedly, Ms. Prewitt did not receive the petition until December 29, 1994, after the checks had been forwarded. MetLife promptly notified the debtor of the problem in a letter dated December 29, 1994, that advised him to have his attorney contact the state court so that it could act appropriately when the checks arrived. A copy of the letter was allegedly sent to David Lufkin and the Clerk and Master of the Chancery Court.[4]

On January 15, 1995, the chancery court allegedly vacated and set aside its previous garnishment orders. However, in an attempt to again enforce the garnishment proceedings against MetLife, Mr. Lufkin, representing Alside, filed a Motion to Set Petition and proposed Conditional Judgment Order with the chancery court on January 18, 1995, requesting that a Petition for Scire Facias

filed with the court in June 1994 be set for hearing and that a conditional judgment be entered against MetLife. MetLife asserts in this adversary proceeding that the January 18, 1995 filings by Mr. Lufkin attempt to enforce a judgment against and obtain property of the debtor in violation of the automatic stay.

The Defendants, in their Answer to the Complaint, allege that the January 18, 1995 filings in state court attempt to obtain and enforce a judgment against MetLife, not the debtor. The Defendants also assert in their Motion for Summary Judgment and Answer that the automatic stay does not apply to a creditor's actions against a garnishee for failing to timely respond to a garnishment and the creditor's subsequent attempt to collect on a judgment against the garnishee. These issues, while seemingly legal in nature, were not properly supported by the Defendants' Motion for Summary Judgment in the manner required by Fed.R.Civ.P. 56(c), and the facts essential to their resolution are not properly before the court at present and were set for trial by the court's January 26, 1995 Order on February 22, 1995, along with the issues raised in the Plaintiff's Complaint.

The court held a hearing on February 9, 1995, to consider three issues prior to the February 22, 1995 trial: (1) Whether the Plaintiff had standing to file the Complaint commencing this adversary proceeding; (2) Whether the Plaintiff's Motion to Quash Subpoena and for Protective Order should be granted; and (3) Whether Plaintiff's request for a preliminary injunction should be granted.

## II

■ With regard to the first issue, the Defendants, in their Motion for Summary Judgment, argue that the Plaintiff does not have statutory standing under the Bankruptcy Code to prosecute alleged violations of the

---

3. The Defendant David A. Lufkin is Alside's attorney in the state court action and he prosecuted the garnishment on behalf of Alside. The court will refer to the Defendants in the plural when discussing the garnishment action.

4. Although not established by the present record, Mr. Lufkin's statements at the February 9, 1995 hearing suggest that an agreed order has been or will be entered in the state court authorizing the Clerk and Master to turn over the entire proceeds of these two checks to the trustee.

automatic stay. Conversely, the Plaintiff contends that it has standing under § 362(h) of the Bankruptcy Code and under the court's inherent contempt powers. Section 362(h) allows "[a]n individual injured by any willful violation of a stay provided by this section ... [to] recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances ... punitive damages." 11 U.S.C.A. § 362(h) (West 1993). In interpreting this statute, courts disagree on the extent to which it grants statutory standing to a creditor challenging another creditor's violation of the automatic stay. The Defendants, relying on *Carlton v. BAWW, Inc.,* 751 F.2d 781 (5th Cir.1985), and *Tilley v. Vucurevich (In re Pecan Groves of Arizona),* 951 F.2d 242 (9th Cir.1991), claim in their brief that only a trustee has standing to challenge a violation of the automatic stay. Special counsel for the Defendant Alside, at the February 9, 1995 hearing on the standing issue, also asserted that third parties do not have standing to challenge the automatic stay, relying on *In re Prairie Trunk Railway,* 112 B.R. 924 (Bankr.N.D.Ill. 1990). The Plaintiff, relying on numerous cases, disagrees.

The Defendants' reliance on *Carlton* is misplaced. The Fifth Circuit in *Carlton* addressed the issue of whether diversity jurisdiction in a district court was destroyed by adding a bankruptcy trustee as a party plaintiff in an action to "void" a fraudulent conveyance under state law. The Fifth Circuit held that the trustee's intervention converted the case to a fraudulent conveyance action under 11 U.S.C.A. § 544(b) (West 1993), that the district court thereafter had subject matter jurisdiction of the case under 28 U.S.C.A. § 1334 (West 1993), and that "the district court was free, under [28 U.S.C.A. §] 157(d) [ (West 1993) ], to accept the bankruptcy judge's invitation ... to exercise subject matter jurisdiction."[5] *Carlton,* 751 F.2d at 788. Clearly, the issue and the Fifth Circuit's holding in *Carlton* are inapposite to this adversary proceeding in which the court is called upon to resolve whether MetLife has standing under § 362(h) to challenge the Defendants' alleged violations of the automatic stay and recover damages.

The Defendants also rely on the Ninth Circuit *Pecan Groves of Arizona* case to support their proposition that only a trustee has standing to challenge a violation of the automatic stay. The Ninth Circuit in *Pecan Groves* addressed the issue of whether creditors, as intervenors, had independent standing to appeal an adverse decision of the bankruptcy court in a proceeding initiated by the trustee to avoid a sale of the debtor's property that took place in violation of the automatic stay under a previous bankruptcy case filed by the debtor. The court concluded that the creditors had no "standing to attack violations of the stay because they are merely creditors, and not the debtor or the trustee." *Pecan Groves,* 951 F.2d at 244–45. This language makes clear that the Ninth Circuit allows debtors as well as trustees to challenge violations of the stay; therefore, *Pecan Groves* does not support the Defendants' argument that only a trustee may challenge violations. *See, e.g., Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289 (4th Cir.1986) (allowing debtor to recover under § 362(h)).

In determining the issue in *Pecan Groves,* the Ninth Circuit referenced § 362, stating that "section 362 is intended solely to benefit the debtor estate. Language from many cases indicates that, if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay." 951 F.2d at 245 (citation omitted). This statement, taken alone, supports the Defendants' argument. However, such a statement is considered dicta to the issue of whether a creditor can challenge another creditor's automatic stay violation under § 362(h).

The issue of whether § 362(h) grants standing to creditors to challenge violations of the automatic stay has been directly addressed in the cases relied upon by the Plaintiff. The Fifth Circuit has recognized in

**5.** Although *Carlton* was decided in 1985, Code § 544(b) and §§ 157(d) and 1334 of Title 28 remain, in their current form, unchanged with respect to those portions relied on by the Fifth Circuit.

dicta that because "§ 362(h) creates a private right of action for one . . . injured by a willful violation of the stay," creditors have standing to challenge automatic stay violations and recover damages under § 362(h). *City of Farmers Branch v. Pointer (In re Pointer),* 952 F.2d 82, 86 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992). Moreover, after its decision in *Pecan Groves,* the Ninth Circuit noted in *Johnston Environmental Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir.1993), "Normally pre-petition creditors . . . shall recover damages under 11 U.S.C. §§ 362(h) and 1109(b) for willful violations of the automatic stay."

In two cases relied upon by the Plaintiff, *Homer National Bank v. Namie,* 96 B.R. 652, 655 (W.D.La.1989), and *Jeffries v. Browning (In re Reserves Development Corp.),* 64 B.R. 694, 699–700 (W.D.Mo.1986), *rev'd on other grounds,* 821 F.2d 520 (8th Cir.1987), the courts allowed creditors to enforce the automatic stay under § 362 based on the legislative history and federal court interpretation of the Bankruptcy Code. *See also Rushville Nat'l Bank v. Wells Fargo Bank (In re DuPont Feed Mill Corp.),* 121 B.R. 555, 561 n. 15 (S.D.Ind.1990) ("It is important to note that in bankruptcy, one creditor may be forced to pay other creditors for violation of the automatic stay [under § 362(h) ]."). The court in *Reserves Development Corp.,* a Chapter 11 case, reached its conclusion that a creditor, as a party in interest, had standing to enforce the automatic stay, based first on § 1109(b) of the Bankruptcy Code which provides that "[a] party in interest, including the debtor, the trustee, [or] . . . a creditor, . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C.A. § 1109(b) (West 1993); 64 B.R. at 699–700. Second, the court supported its analysis under § 1109(b) with the purposes of the Bankruptcy Code, which are to protect debtors " 'from unscrupulous creditors' " and to protect " 'the rights of all creditors to share equally in the assets of the debtor's estate.' " *Id.* at 700 (quoting *Johnson v. First Nat'l Bank (In re Oak Farms, Inc.),* 37 B.R. 178, 179 (Bankr. D.Minn.1984)). The Plaintiff's reliance on *Reserves Development Corp.* is misplaced because the § 1109(b) rationale does not apply to Mr. Clemmer's case filed under Chapter 7.

However, the court in *Homer National Bank,* a Chapter 7 case, based its conclusion that a creditor had standing to enforce the automatic stay on the purposes of the Bankruptcy Code as discussed in *Reserves Development Corp.* and the language of § 362, stating:

> If Congress intended to limit the remedies in § 362(h) to debtors it could have done so by the simple expedient of replacing the term "individual" with "debtor." Congress chose not to do so, and this court is unwilling to impose limitations not supported by the statutory language, jurisprudence, or legislative history. Moreover, it seems illogical to conclude that Congress intended to limit § 362(h) to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment.

*Homer Nat'l Bank,* 96 B.R. at 655; *see* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297.

The foregoing cases support the Plaintiff's theory that creditors have standing to challenge automatic stay violations and seek damages under § 362(h) in Chapters 7 and 11 cases. However, the court need not determine whether creditors have standing to challenge automatic stay violations in this adversary proceeding. MetLife is not a creditor of the debtor. Rather, MetLife is a garnishee presently defending a state court garnishment action related to its alleged failure to timely answer a garnishment. Accordingly, counsel for Defendant Alside at the February 9, 1995 hearing on the standing issue relied on *In re Prairie Trunk Railway,* in which the Bankruptcy Court for the Northern District of Illinois addressed the issue of whether a third-party purchaser of the debtor's assets, as opposed to the debtor or its creditors, could seek damages under § 362(h) for an automatic stay violation, centering its decision, in part, on the definition of the term "individual" as used in § 362(h). That court determined that a nondebtor-noncreditor third party was not entitled to recov-

er damages under § 362(h). 112 B.R. at 929–31.

The Bankruptcy Code does not define the term "individual," and the circuit courts disagree on what is encompassed by the term. The Fifth Circuit, in dicta, and the Third and Fourth Circuits have concluded that the term, as used in § 362(h), includes more than natural persons. *Pointer*, 952 F.2d at 86 (concluding, in dicta, that individual includes creditor); *Cuffee v. Atlantic Business & Community Corp. (In re Atlantic Business & Community Corp.)*, 901 F.2d 325, 329 (3d Cir.1990) (concluding that individual includes corporate debtor); *Budget Serv. Co.*, 804 F.2d at 292 (same); *see Mallard Pond Partners v. Commercial Bank & Trust Co. (In re Mallard Pond Partners)*, 113 B.R. 420, 423 (Bankr.W.D.Tenn.1990) (same—partnership or corporate debtor). However, the Second and Ninth Circuits have concluded that the term only refers to natural persons based on the plain meaning of the statute and the enactment of "§ 362(h) as one of several 'Consumer Credit Amendments,' apparently meant to protect natural, or individual, debtors." *Goodman*, 991 F.2d at 619–20; *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 185–87 (2d Cir.1990).

Regardless of whether the term "individual" only includes natural persons, the courts in all the foregoing cases, except for *Prairie Trunk Railway*, were only called upon to determine whether their definition included debtors and creditors.[6] None of the courts, except for the Illinois bankruptcy court, determined whether the term encompasses nondebtor and noncreditor third parties, which may in rare circumstances include a garnishee holding property of the estate protected by the automatic stay, or a potential judgment debtor of a creditor of the debtor. The Illinois bankruptcy court in *Prairie Trunk Railway* specifically declined to broaden the definition to include third parties. 112 B.R. at 931. The court in *Prairie* concluded:

[T]he classes of parties clearly protected under section 362 are limited to debtors and pre-petition creditors. After extensively researching the law, the Court was unable to find any published opinion extending the remedies afforded under section 362(h) to parties other than the debtor or its pre-petition creditors. Viewed as a whole, the legislative history and evolving case authorities indicate that the principal purpose of section 362(a) was intended to provide a shield, principally for the debtor, to facilitate the concept of a fresh start and to enhance prospects for a reorganization. It logically follows that section 362(h) was enacted to buttress that shield by creating a private right of action for those intended beneficiaries of section 362(a) to fully compensate them for ... defending against willful violations of the stay. The discretionary power and authority conferred upon the courts to award punitive damages serves as a deterrent against egregious behavior and flagrant conduct violating the automatic stay. Thus, Congress has fully provided all the shielding needed by the intended beneficiaries of the automatic stay.

*Id.* at 930.

The Sixth Circuit has also declined to extend the protection of the automatic stay, with one exception, to third parties. In *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir.1983), the plaintiffs, who had been named as codefendants in other state and federal court actions along with two debtors that had commenced bankruptcy cases under Chapter 11, sought protection under the automatic stay. The *Lynch* plaintiffs theorized that because the state and federal court actions against their codefendant debtors had been stayed pursuant to § 362, the actions against them should also be stayed. The court rejected this theory, stating:

It is universally acknowledged that an automatic stay of proceeding accorded by § 362[ (a)(1) [7]] may not be invoked by enti-

6. This court is not called upon to determine whether trustees may recover damages under § 362(h) or whether the case law cited by the

parties supports a finding that the majority of courts allow trustees to do so.

7. Section 362(a)(1) provides:

ties such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the ... debtor.

... Nothing in the legislative history counsels that the automatic stay should be invoked in a manner which would advance the interests of some third party, such as the debtor's co-defendants, rather than the debtor or its creditors. This Court concurs with the district court's conclusion that "it would distort congressional purpose to hold that a third party solvent co-defendant should be shielded against his creditors by a device intended for the protection of the insolvent debtor" and creditors thereof.

*Id.* at 1196–97 (citations omitted).[8]

■ MetLife, as a solvent third party, a garnishee, and a potential judgment debtor of Alside, seeks, among other things, damages for Alside's alleged violations of the automatic stay and an injunction to enjoin Alside from proceeding with its state court garnishment action against MetLife. However, under the authority of the foregoing cases, the Sixth Circuit, and the purpose of § 362 to protect debtors and creditors, the court declines to extend the definition of individual under § 362(h) to include all parties who may have some tangential interest to a debtor's bankruptcy case.[9] Accordingly, the court holds that MetLife, as a solvent third party, garnishee, and potential judgment debtor of Alside, does not have standing under § 362 to challenge violations of the automatic stay, enjoin Alside's prosecution of the state court action, and recover damages.

## III

■ The Plaintiff also asserts that the court has the power under § 105(a) of the Bankruptcy Code to impose civil contempt sanctions on the Defendants if violations of the automatic stay are ultimately determined to have occurred. *See Mountain Am. Credit Union v. Skinner (In re Skinner),* 917 F.2d 444 (10th Cir.1990) (per curiam). Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West 1993).[10]   In applying the plain language of § 105, the Tenth Circuit in *Skinner* concluded that "the weight of authority supports our holding that section 105(a) empowers bankruptcy courts to enter civil contempt orders," and that compensating "a debtor for injuries suffered as a result of a creditor's violation of the automatic stay, is both necessary and appropriate to carry out the provisions of the bankruptcy code and to enforce or implement a previous court order." 917 F.2d at 447;

---

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have' been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]
11 U.S.C.A. § 362(a)(1) (West 1993).

**8.** Following *Lynch,* the Sixth Circuit created one exception to its holding: Third-party codefendants "inextricably intertwined with the debtor" are protected by the automatic stay. *American Imaging Servs., Inc. v. Eagle–Picher Indus., Inc.*

*(In re Eagle–Picher Indus., Inc.),* 963 F.2d 855, 862 (6th Cir.1992). However, this exception, which was used in *Eagle–Picher* and has since been used to stay proceedings against officers of the debtor, is inapplicable in this case. Prohibiting an action against MetLife for its failure to timely answer a garnishment will only protect MetLife, as opposed to the debtor or his creditors; therefore, MetLife and the debtor are not "inextricably intertwined."

**9.** Furthermore, the court need not and declines to adopt a definition for the term "individual." Rather, the court need only conclude that its definition will not encompass all parties having a potential interest in the bankruptcy case.

**10.** Section 105(a) was unaffected by the Bankruptcy Reform Act of 1994.

*see Burd v. Walters (In re Walters),* 868 F.2d 665, 670 (4th Cir.1989) ("[T]he delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution as in violation of separation of powers."). Moreover, the Second and Ninth Circuits, which only allow natural persons to recover damages under § 362(h) for automatic stay violations, acknowledge that "an injured corporation [has the capacity to] recover damages [in bankruptcy court] caused by a violation of the automatic stay under a different theory: ordinary civil contempt." *Goodman,* 991 F.2d at 620 (discussing *Chateaugay,* 920 F.2d at 187).

The Tenth Circuit's interpretation of § 105 in addition to the Second and Ninth Circuit cases support the Plaintiff's theory that based on the plain, broad language of § 105, a creditor can be compensated for injuries resulting from another creditor's automatic stay violation. However, the issue of whether § 105 allows a creditor to seek sanctions for another creditor's automatic stay violation under the court's civil contempt power is not before the court. MetLife is not a creditor requesting that sanctions be imposed against Alside for its alleged automatic stay violations. Rather MetLife is a solvent third party, a garnishee, and a potential judgment debtor of Alside. Regardless of whether the state court grants Alside a judgment against MetLife for its alleged failure to timely respond to a garnishment, the debtor and the property of the estate remain protected by the automatic stay. Although this protection may ultimately require MetLife, under state law, to satisfy from its own funds any state court judgment that Alside may obtain against MetLife, the court, under the authority of the Sixth Circuit, cannot protect MetLife from Alside's prosecution of the state court garnishment action against MetLife, or protect MetLife's corporate funds from Alside. Moreover, protecting MetLife, as opposed to the debtor or his creditors, is not, under § 105(a), "necessary or appropriate to carry out the provisions of" the Bankruptcy Code and the court will not circumvent the limitations placed on this court by the Sixth Circuit and by the Bankruptcy Code by using its civil contempt power to protect MetLife. *See Norwest Bank Worthington v. Ahlers,*

485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Accordingly, the court holds that MetLife, as a solvent third party, garnishee, and potential judgment debtor of Alside, does not have standing to seek civil contempt sanctions against Alside or its attorney, David A. Lufkin, under § 105.

The Plaintiff also argues that, regardless of standing, the court has the power to *sua sponte* enjoin violations of the automatic stay. However, the court is not convinced, based on a review of the Tennessee garnishment statutes, that any violation of the automatic stay has occurred. Alside's state court garnishment action seeks a judgment against MetLife, which if granted can only be satisfied with MetLife's funds rather than funds of the debtor and property of the estate that are protected by the automatic stay. As the state court garnishment action against MetLife proceeds, the bankruptcy trustee and the debtor, at the least, are responsible for invoking the § 362 automatic stay provisions if a violation of the automatic stay is likely to occur or does in fact occur. Moreover, Alside, MetLife, and their counsel are required to take affirmative action to ensure that a violation does not occur. *See In re Timbs,* 178 B.R. 989, 991 (Bankr.E.D.Tenn.1994) (Parsons, J.), and cases cited therein.

Based on the foregoing facts and conclusions of law, the Defendants' Motion for Summary Judgment with regard to the standing issue will be granted and the Plaintiff's Complaint will be dismissed. The court need not further consider the Plaintiff's Motion to Quash and for Protective Order or the pending Motion filed by the Plaintiff requesting a preliminary injunction against the Defendants.